IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAIMEE ATWOOD,

               Plaintiff,

   v.

PCC STRUCTURALS, INC.,

               Defendant.

No. 3:14-cv-00021-HZ

OPINION & ORDER

David D. Park
ELLIOT & PARK
0324 SW Abernathy St.
Portland, OR 97239

Megan R. Lemire
LEMIRE & HIRANO, PC
0324 SW Abernethy St.
Portland, OR 97239

       Attorneys for Plaintiff

Karen L. O'Connor
Melissa J. Healy
STOEL RIVES, LLP
900 SW Fifth Ave., Suite 2600
Portland, OR 97204

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Jaimee Atwood brings this employment discrimination action against her former employer, Defendant PCC Structurals, Inc. Plaintiff brings claims under state and federal law, alleging discrimination based on use of family medical leave, religion, disability, and whistleblower status. Plaintiff also brings claims of retaliation and wrongful discharge. Defendant moves for summary judgment on all claims.

The Court held oral argument on Defendant's motion for summary judgment on May 13, 2015. For the reasons explained below, Defendant's motion is granted as to Plaintiff's claims of discrimination based on religion, disability, and retaliation pursuant to ORS 659A.230. Defendant's motion on Plaintiff's claim of wrongful discharge is granted except to the extent the claim is premised upon Defendant terminating Plaintiff for asserting her rights under the Oregon Family Leave Act. Defendant's motion is denied as to all of Plaintiff's other claims.

## BACKGROUND

I.      **Defendant's Leave and Attendance Policies**

Defendant PCC Structurals, Inc. is an Oregon corporation that "makes large, complex structural investment castings for aircraft." Compl. ¶ 7; Def.'s Mot. 2. Defendant's "Family Medical and Military Leave Policy" provides leave under the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654; and the Oregon Family Leave Act (OFLA), ORS 659A.150-186. O'Connor Decl. Ex. 2 at 51. Absences under these statutes are collectively called Family Medical Leave (FML) in Defendant's policy. Id.

An employee seeking FML must obtain a "medical certification" from her health care provider and submit a "Request for Leave Form" for each absence related to that medical certification. Schwanz Decl. ¶ 3. Medical certifications for chronic conditions, once completed

by the employee's health care provider, are typically good for six months, although Defendant occasionally seeks clarification of the information in the medical certification. Id. at ¶ 4. Defendant responds to each request for leave in writing, notifying an employee whether or not the request is approved, pending, or denied. Id. at ¶ 5. The response letter informs the employee: "You are entitled to appeal this decision. Appeals must be completed and returned to Human Resources within seven (7) days of this letter." See, e.g., O'Connor Decl. Ex. 2 at 56.

Defendant's policy on "Attendance and Punctuality" states that Defendant reviews an employee's attendance record for the prior 365 days. O'Connor Decl. Ex. 2 at 34. If either a partial absence occurs (working at least half of the scheduled work shift, but not the full shift) or an individual is tardy, "half an absence day is received." Id. An employee must notify her supervisor of any absence or tardiness within the first hour of the start of the employee's shift, unless she is too incapacitated to make the call. Id. "Failure to provide timely notification will result in a double absence day (full or partial as applicable)." Id. "An employee will be terminated if the employee has eleven (11) absence days (that are not excused or arranged) in a 365 day period." Id. Defendant refers to absence days as "occurrences" or "points." In other words, having 11 or more occurrences is grounds for dismissal. Id.

## II.    Plaintiff's Work History with Defendant

Plaintiff began working for Defendant in approximately 1988 as a wax cleaner and wax assembler. Pl. Dep.[1] 18:23-19:7, 19:20-22. In approximately 2008, Plaintiff became a welding "lead," a position she held until it was eliminated in July 2012. Compl. ¶ 15; Pl. Dep. 20:12-14. From July 2012 through her termination in April 2013, Plaintiff worked as a welder. Id.

---

[1] Portions of Plaintiff's Deposition are attached to the O'Connor Declaration [33-2], the Smith Declaration [40-6], and the Supplemental O'Connor Declaration [48]. For the sake of clarity, the Court cites to Plaintiff's Deposition as "Pl. Dep."

Prior to August 2012, Plaintiff worked a Monday-Friday schedule. Pl. Decl. ¶ 32. She occasionally was scheduled to work mandatory overtime on Sundays. Id. Plaintiff was often absent when she had to work on Sundays. Defendant did not challenge her use of FML on those days. Id; Pl. Decl. ¶ 22.

Beginning in August 2012, Defendant assigned Plaintiff to work the day shift on Sunday-Thursday. Compl. ¶ 15. In February 2013, Plaintiff returned to a Monday-Friday schedule. Atwood Decl. Ex. C. Even after returning to a Monday-Friday schedule, Plaintiff was still required at times to work mandatory overtime on Sundays. Atwood Decl. Ex. C.

In late March or early April 2013, Kelly Rhodes, Employee Relations Specialist III for Defendant, received a notification that Plaintiff had accrued 11 occurrences during the 365 day period ending on March 14, 2013. Rhodes Decl. ¶ 20. On April 10, 2013, Plaintiff was suspended for violating the attendance policy. Rhodes Decl. Ex. 11. On April 15, 2013, Defendant fired Plaintiff. Compl. ¶ 24.

### III.    Plaintiff's Absences and Use of FML

Plaintiff first requested FML in mid-2008 for anxiety and stress. Pl. Decl. ¶ 2; Pl. Dep. 56:22-25. Over the next several years, Plaintiff submitted medical certifications and requests for FML at various times. See, e.g., Plaintiff's Medical Certifications from June 2011, Smith Decl. Ex. A; and December 13, 2011, Smith Decl. Ex. B. Plaintiff was approved many times for intermittent use of FML on Sundays (when she was scheduled for mandatory overtime) based on these medical certifications. Compl. ¶ 13. According to Plaintiff, she took leave on Sundays pursuant to her health care provider's orders to attend church as necessary for Plaintiff's serious medical condition. Id. at ¶ 14. Plaintiff states that attending church and being active in the church "significantly reduced my anxiety/stress and significantly reduced my use of prescription

medications." Pl. Decl. ¶ 4. In 2012, Plaintiff became a baptized Christian and began regularly attending church services on Sunday, assisting at church on Sunday, and regularly participating in church life groups. Pl. Decl. ¶ 3.

In July 2012, Plaintiff submitted to Defendant a third medical certification completed by her health care provider, Dr. Erickson.[2] Rhodes Decl. Ex. 1. The certification stated that Plaintiff suffered from acute anxiety and stress. Id. at 2. Dr. Erickson estimated that Plaintiff would be incapacitated due to her medical condition 4-5 days a month. Id. at 3. He stated that Plaintiff would be "unable to stay at work due to anxiety flare-ups." Id. He stated that the probable duration of her condition was "unknown." Id. at 2. Dr. Erickson's certification did not say anything about Plaintiff's ability or inability to work on Sundays. He also answered "no" to the question of whether treatment or reduced hours were "medically necessary." Id.

In August 2012, Defendant changed Plaintiff's schedule to Sunday-Thursday. Compl. ¶15. Plaintiff began using more FML in order to be off on Sundays. Plaintiff was absent every Sunday in August and September, 2012. Rhodes Decl. ¶ 5. Plaintiff also missed additional days during those months—she requested a total of seven days of FML in August and eight days of FML in September. Rhodes Decl. ¶ 5. Plaintiff told Ms. Rhodes that she was using her FML to attend church for her stress and anxiety. Id.

Plaintiff's string of Sunday absences cast doubt on her stated reasons for FML because nothing in the medical certifications indicated any correlation between her health condition and the manifestation of symptoms on any particular day of the week.

On or about October 7, 2012, Ms. Rhodes verbally informed Plaintiff that Defendant would no longer grant her FMLA/OFLA leave for anxiety and stress on Sundays. Pl. Decl. ¶ 11.

---

[2] Based on Plaintiff's deposition, it appears that Plaintiff (instead of Dr. Erickson) filled in parts of the 2011 certifications. However, Defendant never sought clarification or authentication of these certifications.

Defendant did not ask Plaintiff to obtain a recertification nor did Defendant inform Plaintiff that the July 2012 medical certification was rejected. Id.

In several letters to Plaintiff written on October 8, 2012, Defendant informed Plaintiff that her Requests for Leave from September 22, 23, and 30, 2012, were denied retroactively. O'Connor Decl. Ex. 2 at 72-73. The letters stated: "Our records indicate that you are ineligible for FML because your request was ineligible." Id. An additional letter notified Plaintiff that her request for FML on October 7, 2012 was "conditionally designated as FML" but that Plaintiff was required to "provide the completed insufficient documentation" before October 22, 2012. Id. at 75.

Plaintiff obtained a new medical certification from Dr. Erickson and gave it to Ms. Rhodes and Ms. Schwanz, Defendant's employee who administers the company's FML policy and program.[3] Pl. Decl. ¶ 11; Schwanz Decl. ¶ 2. The new certification, which Defendant received on October 11, 2012, stated that Plaintiff could only work a Monday-Friday daytime shift schedule. Rhodes Decl. Ex. 2 at 2. Dr. Erickson further stated that:

> Jaimee has [sic] baptized and is actively involved in church activities which is helping her control her anxiety without medication. Missing her involvement in her church activities will cause increase [sic] anxiety and stress. She should not work Sundays.

Id.

In an undated letter sent in late October 2012, Ms. Rhodes sought clarification from Dr. Erickson regarding Plaintiff's inability to work on Sundays. Rhodes Decl. Ex. 3. Specifically, Ms. Rhodes asked why Plaintiff's absence from work on weekends was "medically necessary." Id. According to Plaintiff, Ms. Rhodes did not inform Plaintiff that she was going to contact Dr.

---

[3] Ms. Rhodes' declaration states that Defendant received another medical certification from Dr. Erickson because "[t]he Company requested clarification from [Plaintiff's] provider regarding the need for leave." Rhodes Decl. ¶ 6. To the extent this discrepancy in the parties' accounts creates a genuine issue of material fact, it weighs in favor of denying Defendant's motion.

Erickson, nor had Plaintiff given Ms. Rhodes written permission to contact Dr. Erickson. P. Decl. ¶ 12. Dr. Erickson responded on October 29, 2012, stating: "Jamie can indeed work on Saturdays but she is involved in multiple church activities on Sundays and cannot work at all on Sunday." Rhodes Decl. Ex. 4.

On November 7, 2012, Ms. Rhodes met with Plaintiff and told her that Defendant was denying Plaintiff FMLA/OFLA leave on Sundays for several prior dates. Pl. Decl. ¶ 13. Plaintiff states that this was the first she heard of Ms. Rhodes communicating with Dr. Erickson. Id. Ms. Rhodes provided Plaintiff with a memorandum to summarize their November 7 conversation. Rhodes Decl. Ex. 5. The memorandum stated:

> The purpose of this Memorandum is to summarize our discussion on November 7, 2012.
>
> We have reviewed the completed medical certification provided to us by your health care provider along with the additional information dated 10/29/2012, based on this information we are unable to approve your requests for FML leave on 10/7, 10/21, 10/28, and 11/4. Currently you have twelve unexcused absence days. Going forward, if you have any additional unexcused absence days, your employment with PCC will be terminated.
>
> In addition, we also discussed your request for a religious accommodation. We instructed you to work with your leadership staff on coming to an agreement for your shifts on Sundays. Since your church offered multiple service times on Sundays some of the options we proposed were:
>
> - Attend the early morning session and come to work after the service ended
> - Come in at your regularly scheduled start time, leave to attend church, and then come back to finish your shift
> - Come in at your regularly scheduled start time, work and then attend the evening service

Rhodes Decl. Ex. 5. According to Plaintiff, she discussed these options with Dr. Erickson and he "did not approve any of these options for my working on Sundays." Pl. Decl. ¶ 31.

On November 8, 2012, Plaintiff delivered a letter to Ms. Rhodes from Dr. Erickson. The later stated:

As I stated in the FMLA dated 10/9/2012 Jaimee suffer's [sic] from anxiety. It [sic] medically necessary for her to be off work on Sunday to attend church and associated social activities. This is extremely valuable in control of [sic] her anxiety and decreases the amount of medication that she requires to control her anxiety. This in [sic] not a religious accommodation but is a medical accommodation.

Pl. Decl. Ex. A.

Ms. Rhodes told Plaintiff that Plaintiff needed to undergo an independent medical examination by a psychiatrist, Dr. S. David Glass. Pl. Decl. ¶ 16. Plaintiff met with Dr. Glass on November 27, 2012, at Defendant's expense. Pl. Dep. 108:25-109:2. Dr. Glass produced a report, stating that Plaintiff's "psychiatric situation/diagnosis would not be a reason for the need for Family Medical Leave." Rhodes Decl. ¶ 13; Ex. 8. Dr. Glass further stated that: "Rather than missing work on Sundays, in my view [Plaintiff] would be well served to develop behavioral strategies to manage the anxiety, quit smoking, discontinue the use of opioids and benzodiazepine, and develop a self-directed exercise program." Id. On or about December 5, 2012, Ms. Rhodes gave Plaintiff a copy of Dr. Glass' report and told Plaintiff that Defendant would no longer approve Plaintiff's use of FMLA/OFLA for stress and anxiety on any day of the week. Pl. Decl. ¶ 18.

On January 2, 2013, Plaintiff emailed Ms. Rhodes regarding Defendant's decision to no longer approve her use of FML based on stress or anxiety. Rhodes Decl. ¶ 17; Ex. 10. Plaintiff stated: "[N]ow that we have opposing positions with our 2 physicians, is there any way to break the tie?" Id. Ms. Rhodes responded: "Dr. Glass is an independent medical examiner so there really isn't a tie. However, if you would like to seek out another doctor and see them that is up to you." Id.

In February 2013, Plaintiff switched to a different department where she no longer had to regularly work on Sundays. Pl. Dep. 128:9-23. However, she still was required to work overtime

8 - OPINION & ORDER

on some Sundays. On February 11, 2013, Plaintiff emailed Ms. Rhodes and asked her about her options for "skipping Sunday overtime work." Pl. Decl. ¶ 33. Ms. Rhodes informed Plaintiff that her options were the same as Ms. Rhodes had explained in her October 7, 2012 memorandum. Pl. Decl. ¶ 33.

On March 11-14, 2013, Plaintiff missed four days of work.[4] Plaintiff was approved for leave on March 11-13, because her child was sick. However, on March 14, 2013, Plaintiff called in late (at around 7:15 a.m. when her shift started at 6 a.m.) to report that she would not be at work. Pl. Decl. ¶ 19. Plaintiff had been involved in a car accident on the evening of March 13. Id. The combination of the collision, her son's illness, and her lack of sleep "created a great deal of stress/anxiety[.]" Id. Plaintiff states the following in her declaration:

> I was physically unable to get up for work on time on March 14 [2013] due to my anxiety/stress. I took my medication and, as soon as my medication became effective enough for me to do so, I telephoned work and reported that I would not be in to work. I believe I called in around 7:15 a.m. I later told Ms. Rhodes why I was unable to call in before 7:15 a.m.

Id. Plaintiff was given another "occurrence" on her attendance record as a result of this late call.

Plaintiff's failure to timely call in to report her absence on March 14, 2013 placed her above the maximum number of occurrences permitted in Defendant's attendance policy. Id. On April 15, 2013, Plaintiff was terminated. Rhodes Decl. ¶ 23; Pl. Dep. 134:24-135:11.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

---

[4] Plaintiff's Declaration states that she missed four days of work in March 2012. P. Decl. 5. The Court assumes this is a typographical error and that Plaintiff intended to refer to March 2013.

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

As to a plaintiff in an employment discrimination action, as a general matter the plaintiff must "produce very little evidence in order to overcome an employer's motion for summary judgment." Failey v. Donahoe, No. 03:11-CV-01088-HU, 2013 WL 1294697, at *13 (D. Or. Mar. 26, 2013) (quoting Chuang v. Univ. of Calif. Davis, Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000). The Chuang court explained that this minimal evidence standard is due to the nature of employment cases, where "'the ultimate question is one that can only be resolved

through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a

full record.'" Id. (quoting Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir.

1996)).

## DISCUSSION

## I.    Violations of FMLA and OFLA (Claims 1 and 2)

Plaintiff brings claims under the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-

2654 and the Oregon Family Leave Act (OFLA), O.R.S. 659A.150-659A.186. Plaintiff alleges

that during the course of her employment with Defendant, she exercised her rights under FMLA

and OFLA by requesting leave for her serious medical condition. Compl. ¶¶ 33. According to

Plaintiff, she complied with Defendant's requests for medical certifications, yet Defendant

denied her "leave to which she was entitled and/or otherwise interfered with [her] right to use

[FMLA/OFLA], including by terminating her employment." Id. at ¶¶ 34, 41, 42. Because there is

a genuine issue of fact as to whether Plaintiff was entitled to FMLA/OFLA, the Court denies

Defendant's motion for summary judgment on these claims.

Although FMLA and OFLA are structured somewhat differently, both prohibit an

employer from taking negative action against an employee who has requested leave. 29 U.S.C. §

2615(a)(1); O.R.S. 659A.183. FMLA makes it "unlawful for any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right provided under [FMLA.]"

29 U.S.C. § 2615(a)(1).[5] "The FMLA implementing regulations prohibit an employer from

---

[5] While Plaintiff does not specify which portion of the relevant statute applies to this case, the Court
construes her claim as an "interference" claim under 29 U.S.C. § 2615(a)(1) as opposed to a "retaliation"
claim under Section 2615(a)(2). In the Ninth Circuit such claims alleging adverse employment action in
response to use of, or efforts to use, FMLA-protected rights, are properly construed as "interference"
claims under 29 U.S.C. § 2615(a)(1). Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1122–25 (9th
Cir. 2001) ("By their plain meaning, the anti-retaliation or anti-discrimination provisions do not cover
visiting negative consequences on an employee simply because he has used FMLA leave. Such action is,
instead, covered under § 2615(a)(1), the provision governing 'Interference [with the] Exercise of rights.'

interfering with an employee's rights under the Act by 'us[ing] the taking of FMLA leave as a negative factor in employment actions.'" Russell v. Mountain Park Health Ctr. Props., LLC, 403 Fed. App'x. 195, 196 (9th Cir. 2010) (quoting 29 C.F.R. § 825.220(c)). The Ninth Circuit has previously "declined to apply the type of burden shifting framework recognized in McDonnell Douglas to FMLA interference claims; rather, [an employee] can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." Sanders v. City of Newport, 657 F.3d 772, 778 (9th Cir. 2011) (quotation marks and citations omitted).

OFLA prohibits an employer from denying family leave to which an employee is entitled. OFLA also prohibits an employer from retaliating or discriminating against an employee who has inquired about, submitted a request for, or invoked any provision of OFLA. The Oregon legislature has directed that OFLA be "construed to the extent possible in a manner that is consistent with any similar provisions" under FMLA. ORS 659A.186(2). "Consistent with this legislative declared intent, the Oregon courts have looked to federal law when interpreting OFLA." Sanders, 657 F.3d at 783 (citing Yeager v. Providence Health Sys. Or., 195 Or. App. 134, 96 P.3d 862, 866 (2004); Centennial Sch. Dist. No. 28J v. Or. Bureau of Labor & Indus., 169 Or. App. 489, 10 P.3d 945, 951–52 (2000). Accordingly, the legal standards for Plaintiff's state law OFLA claim parallel those for her FMLA claim.

To prevail on an interference claim, Plaintiff must show that she took FMLA protected leave, that she suffered an adverse employment action, and that the adverse action was causally related her FMLA leave. Bachelder, 259 F.3d at 1125. It is undisputed that the stated reason for Plaintiff's termination was that her number of absences exceeded the limit allowed by Defendant's attendance policy. It is also undisputed that if the absences Plaintiff attempted to

"); see also Xin Liu v. Amway Corp., 347 F.3d 1125, 1133 n. 7 (9th Cir. 2003); Mortensen v. Pacificorp, 2007 WL 405873, *15–16 (D. Or. Feb. 1, 2007). At oral argument, Plaintiff appeared to argue that she asserted an "interference" claim.

claim as FMLA leave in the fall of 2012 had been approved as such, she would not have exceeded the number of allowed absences. Thus, the issue for this Court to address is whether Plaintiff took FMLA protected leave; in other words, whether she should have been granted FMLA leave on various days in which she requested it and was denied.

Plaintiff must demonstrate that she was entitled to FMLA/OFLA. See 29 U.S.C. § 2615(a)(1)-(2); ORS § 659A.183(1)-(2). Plaintiff was entitled to intermittent leave under FMLA and OFLA only if it was "medically necessary due to a serious health condition." 29 C.F.R § 825.302(f); ORS § 659A.162(8)(a). The parties' dispute centers around whether it was "medically necessary" for Plaintiff to be off work for the entire day on Sundays.

Plaintiff contends that she submitted ample evidence to demonstrate that it was medically necessary to have Sundays off. Plaintiff's doctor, Dr. Erickson, provided Defendant with a "statement of medical necessity" on three separate occasions. First, in the October 9, 2012 medical certification, Dr. Erickson stated that Plaintiff's church activities helped control her anxiety without medication, missing those activities would increase Plaintiff's anxiety and stress, and Plaintiff should not work on Sundays. Rhodes Decl. Ex. 7 at 4. Second, in a letter to Ms. Rhodes on November 8, 2012, Dr. Erickson stated that it was medically necessary for Plaintiff "to be off work on Sunday to attend church and associated social activities." Rhodes Decl. Ex. 7 at 8. Third, on March 15, 2013, Dr. Erickson wrote a note[6] stating that, "[t]his patient has a serious medical condition working Sundays or split shift Sunday is not a reasonable accommodation for her condition." Pl. Decl. Ex. B, [39-1]. In addition, Plaintiff submits a declaration from Dr. Erickson on February 20, 2015, which states that "attending church and

---

[6] Defendant argues that the Court should not consider Dr. Erickson's March 15, 2013 note because, by the time Defendant received it, Plaintiff had already exceeded the allowable number of occurrences. The Court's conclusion does not change whether it considers the note or not. Before Defendant decided to terminate Plaintiff, Defendant had received at least two letters from Dr. Erickson opining that it was medically necessary for Plaintiff to have Sundays off work.

church related activities on Sundays was medically necessary for [Plaintiff's] well-being and allowed her to decrease her reliance on prescription [medications]." Erickson Decl. 3.

Defendant argues that Plaintiff never provided an adequate medical certification that explained why she needed the whole day off on Sundays to attend church and church-related activities. According to Defendant, Plaintiff's doctor, Dr. Erickson failed to explain why Plaintiff needed the entire day off, despite being asked to clarify his medical opinion several times. In addition, Dr. Glass, the psychiatrist who examined Plaintiff at Defendant's request, found that Plaintiff did "not demonstrate a formal psychiatric disorder that would require Family Medical Leave." Rhodes Decl. Ex. 8 at 6. Dr. Glass also opined that it was not medically necessary for Plaintiff to have Sundays off. Id.

There is a genuine issue of material fact as to whether it was medically necessary for Plaintiff to be off on Sundays. Plaintiff provided Defendant with multiple opinions by Dr. Erickson. Defendant obtained its own expert report refuting Dr. Erickson's opinion. Thus, there is an issue of fact that is properly resolved by a jury, not by this Court in a motion for summary judgment. Therefore, the Court denies Defendant's motion for summary judgment on Plaintiff's FMLA and OFLA claims, Claims 1 and 2.

## II.    Religious Discrimination (Claims 3 and 4)

Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Oregon Workplace Religious Freedom Act, ORS § 659A.033. Plaintiff alleges that Defendant discriminated against Plaintiff's religious practices by "denying [her] leave to attend church on Sundays and/or otherwise interfered with [her] right to practice her religion, including by terminating her employment based on her unavailability to work on Sundays due to her religious practices." Compl. ¶¶ 49, 57. Because Plaintiff fails to raise any genuine issue of fact

regarding a religious need to be off of work on Sundays, the Court grants summary judgment to Defendant on these claims.

Title VII makes it unlawful for an employer "to discharge any individual ... because of such individual's ... religion[.]" 42 U.S.C. § 2000e–2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). The court's analysis of a plaintiff's religious discrimination claim under the Oregon statutes is the same as under Title VII. See Ovchinikov v. Oak Valley Auto Sales & Leasing, Inc., No. CIV. CV-03-905-AA, 2004 WL 2889771, at *3 (D. Or. Dec. 13, 2004) (citing School Dist. No. 1 v. Nilsen, 271 Or. 461, 534 (1975); Meltebeke v. Bureau of Labor and Indus., 120 Or. App. 273 n. 3 (1993) (Edmonds, J., specially concurring).

To establish religious discrimination on the basis of a failure to accommodate theory[7], Plaintiff must first set forth a *prima facie* case that: (1) she had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer discharged her because of her inability to fulfill the job requirement. Slater v. Douglas Cnty., 743 F. Supp. 2d 1188, 1191 (D. Or. 2010) (citing Peterson, 358 F.3d at 606; Berry v. Department of Social Services, 447 F.3d 642, 655 (9th Cir. 2006)).

If Plaintiff makes out a *prima facie* failure-to-accommodate case, the burden then shifts to Defendant to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without

---

[7] A claim of religious discrimination can be asserted under several different theories, including failure to accommodate and disparate treatment. Peterson v. Hewlett-Packard Co., 358 F.3d 599, 602-03 (9th Cir. 2004) (citations omitted). Plaintiff's Complaint only asserts a failure to accommodate theory. See Compl. ¶¶ 48-49, 56-57. However, in Plaintiff's Response to Defendant's Motion for Summary Judgment, she advances for the first time a theory based on disparate treatment. The Court declines to address the disparate treatment theory. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000) (district court properly barred plaintiff from proceeding at summary judgment on a theory not alleged in the complaint).

undue hardship." <u>Peterson</u>, 358 F.3d at 606 (citations omitted); <u>see also</u> <u>EEOC v. Townley</u>
<u>Engineering & Mfg. Co.</u>, 859 F.2d 610, 615 (9th Cir. 1988) ("burden of attempting an
accommodation rests with the employer rather than the employee").

 Defendant argues that Plaintiff cannot establish that she had a religious belief, the
practice of which conflicted with an employment duty. The Court agrees. While Plaintiff has
demonstrated that attending church is central to her beliefs, she offers no evidence that her
religious beliefs require her to be off on Sundays in their entirety. In fact, she testified that the
reason she needed to be off on Sundays was for medical reasons, as opposed to religious reasons.
Pl. Dep. 96:23-97:7, 107:11-15. Dr. Erickson concurred, specifically stating that Plaintiff needed
Sundays off as a medical accommodation, <u>not</u> as a religious accommodation. Rhodes Decl. Ex.
6.

 Even if Plaintiff can show that her religion requires her to attend church on Sunday, her
religious discrimination claim fails because Defendant offered ample scheduling
accommodations that would have allowed Plaintiff to attend church while still reporting to work.
Defendant offered Plaintiff the opportunity to: (1) work after church; (2) work a split shift
around church; or (3) work early and attend evening church. Plaintiff never attempted any of
these alternative scheduling arrangements, nor did she propose other solutions. Plaintiff
maintains that she could not work at all on Sundays, no matter how Defendant altered her
schedule. Because Plaintiff provides no evidence of a religious belief that would prevent her
from working part of a Sunday, the Court grants summary judgment to Defendant on Plaintiff's
religious discrimination claims.

///

### III.    Disability Discrimination (Claims 5 and 6)

Plaintiff brings claims under Title I of the Americans with Disabilities Act (ADA), 42

U.S.C. §§ 12101-12213, and the Oregon State Disability Discrimination Law, ORS 659A.230. In

her complaint, Plaintiff alleges that Defendant failed to engage in an interactive process to

determine whether a reasonable accommodation existed, Defendant failed to provide Plaintiff

with a reasonable accommodation, and Defendant terminated Plaintiff because of her disability.[8]

Because Plaintiff fails to raise an issue of fact as to whether she was a qualified individual with a

disability, her claims fail as a matter of law. Therefore, the Court grants Defendant's motion for

summary judgment on Plaintiff's disability discrimination claims.

The ADA prohibits an employer from discriminating "against a qualified individual on

the basis of disability." 42 U.S.C. § 12, 112(a). Likewise, ORS § 659A.112(a) makes it unlawful

for an employer to "discriminate in compensation or in terms, conditions, or privileges of

employment on the basis of disability." To establish a *prima facie* case of disability

discrimination under state or federal law, a plaintiff must show: (1) that she is disabled within the

meaning of the ADA; (2) that she is a qualified individual with a disability; and (3) that she was

discriminated against because of her disability. Smith v. Clark Cnty. Sch. Dist., 727 F.3d 950,

955 (9th Cir. 2013) (citing Nunes v. Wal–Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999).

A qualified individual with a disability is defined as "an 'individual with a disability who, with

or without reasonable accommodation, can perform the essential functions of the employment

position that such individual holds or desires.'" Id. (quoting 42 U.S.C. § 12111(8)). The standard

for establishing a *prima facie* case of discrimination under Oregon law is identical to that used in

---

[8] Plaintiff's complaint also alleges that "Defendant's acts were part of a pattern and practice of
discrimination against individuals with disabilities." Compl. ¶ 73. Plaintiff offers no evidence to support
this allegation and neither party addressed it in their briefs or at oral argument. Because the Court finds no
facts to support this allegation, the Court grants summary judgment to Defendant on this claim.

federal law. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1087 (9th Cir. 2001); see

Henderson v. Jantzen, Inc., 79 Or. App. 654 (1986).

The Ninth Circuit analyzes ADA cases using the burden-shifting analysis from

McDonnell Douglas and applies the analysis to both federal and state claims. E.g., Risteen v.

Wal–Mart Stores, Inc., Civ. No. 09–6020–AA, 2010 WL 1838105, at *3 (D. Or. 2010). Once

Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to Defendant to

provide a non-discriminatory reason for the adverse employment action. E.g., Diaz v. Eagle

Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008). If Defendant does so, the burden shifts

back to Plaintiff to show Defendant's reason was a pretext for discrimination. Id. Or. Rev. Stat. §

659.449 provides that Oregon's discrimination laws "shall be construed to the extent possible in a

manner that is consistent with any similar provision of the federal Americans with Disabilities

Act of 1990 ['ADA'], as amended." Accordingly, the Court uses the same analysis for Plaintiff's

federal and state law disability discrimination claims.

I.      Disability

Under the ADA, Plaintiff is disabled if she has a physical or mental impairment that

substantially limits one or more of the major life activities, or if there is a record of such an

impairment.[9] 42 U.S.C. § 12102(1). Ninth Circuit precedent does not require comparative or

medical evidence to establish a genuine issue of material fact regarding the impairment of a

major life activity at the summary judgment stage. Head v. Glacier Nw. Inc., 413 F.3d 1053,

1058 (9th Cir. 2005). Rather, a plaintiff's testimony may suffice to establish a genuine issue of

material fact. Id.

---

[9] Plaintiff's Complaint also alleged that she was "regarded as having such an impairment" as defined in
42 U.S.C. § 12101(1)(c). Compl. ¶ 65. However, Plaintiff has conceded that category. Pl.'s Resp. 32.

18 - OPINION & ORDER

Based on her deposition testimony and declaration, the Court understands Plaintiff's alleged disability to be "severe anxiety and stress" that interferes with her ability to concentrate, care for herself, work, think, communicate, engage in fine manipulation, focus, function, work, or "do anything in . . . daily life." Atwood Decl. ¶ 30; Pl. Dep. 142:1-14. Defendant does not dispute that Plaintiff's alleged disability interferes with major life activities. The issue Defendant raises is whether Plaintiff is "substantially limited" by her mental impairment.

Plaintiff testified that during her last year working for Defendant, she had approximately 3-5 panic attacks per month. According to Defendant, this is insufficient to establish that she was "substantially limited." However, Defendant ignores other part of Plaintiff's testimony that establishes that her impairment interferes with her major life activities. Plaintiff testified that her panic attacks were debilitating, caused her to leave work, made her physically ill, and rendered her in a condition where she could not do anything in her daily life. Pl. Decl. ¶ 30. The Court finds that Plaintiff raises an issue of material fact as to whether she is disabled as defined by the ADA.

II.    Record of disability

Plaintiff argues that, in addition to having a disability, she had a record of a disability, as defined by the ADA. An individual has a record of such an impairment if she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(3).

According to Plaintiff, her extensive record of a disability is demonstrated through her requests for family leave to attend church and decrease the frequency and severity of her anxiety and stress. Specifically, Plaintiff argues that Defendant had notice of her disability through the following: "numerous medical certifications, numerous internal PCC [Defendant] forms, Dr.

19 - OPINION & ORDER

Erickson's letters of October 29, 2012 and November 8, 2012 (in which Dr. Erickson refers to Plaintiff's need for Sundays off as a "medical accommodation" for her condition), and Dr. Erickson's March 15, 2013 note which stated that "this patient has a serious medical condition working Sundays or split shift Sunday is not a reasonable accommodation for her condition." Pl.'s Resp. 33.

However, Plaintiff does not offer any evidence to show that her FML requests were sufficient to put Defendant on notice that she had a disability. ADA's "disability" and FMLA's "serious health condition" are different concepts, and must be analyzed separately. 29 C.F.R. § 825.702. Just because an employee, like Plaintiff, requires intermittent FMLA leave for a serious health condition does not mean that the employer is automatically on notice that the employee is "disabled" as that term is defined under the ADA. See Chapman v. UPMC Health Sys., 516 F. Supp. 2d 506, 533 (W.D. Pa. 2007).

Where a plaintiff has periodically requested time off to treat her disability, notifying the defendant of her need for leave and reason for the leave, it is reasonable to infer that the plaintiff had a record of disability. See this Court's analysis in Wessels v. Moore Excavation, Inc., No. 03:14-CV-01329-HZ, 2014 WL 6750350, at *4 (D. Or. Dec. 1, 2014); see also Jones v. HCA, No. 3:13cv714, 2014 WL 1603739, at *7 (E.D. Va. Apr. 21, 2014) (allegations that plaintiff requested an accommodation and sought leave allowed the court to infer that defendant had notice of plaintiff's condition). Here, in contrast to Wessels or Jones, Plaintiff did not notify Defendant of any need for an accommodation to treat her disability beyond her request for FMLA/OFLA. Therefore, Plaintiff fails to raise an issue of fact as to whether she had a record of a disability.

III.    Qualified individual

An individual is qualified if "with or without reasonable accommodation, [she] can perform the essential functions of the employment position...." 42 U.S.C. § 12111(8). "The court first examines whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the position. The court then considers whether the individual can perform the essential functions ... with or without a reasonable accommodation." Bates v. United Parcel Svc., Inc., 511 F.3d 974, 990 (9th Cir.2007) (en banc) (internal quotation marks omitted).

Defendant does not dispute that Plaintiff had the requisite technical skills for the job or that she suffered an adverse employment action. The issue is whether Plaintiff could perform the essential functions of the job with or without a reasonable accommodation. Plaintiff runs into an insurmountable hurdle because Defendant establishes that regular attendance is an essential function of the welder position and Plaintiff refused reasonable accommodations that would have allowed her to maintain regular attendance.

It is a "rather common-sense idea ... that if one is not able to be at work, one cannot be a qualified individual." Waggoner v. Olin Corp, 169 F.3d 481, 482 (7th Cir. 1999). "Both before and since the passage of the ADA, a majority of circuits have endorsed the proposition that in those jobs where performance requires attendance at the job, irregular attendance compromises essential job functions." Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237-38 (9th Cir. 2012). Attendance may be necessary for a variety of reasons. Sometimes, it is required simply because the employee must work as part of a team, sometimes it is because the jobs require the employee to work with items and equipment that are on site, and other jobs  require face-to-face interaction with clients and other employees. Id. (collecting cases).

Here, Defendant has submitted undisputed evidence that Plaintiff's attendance, including on Sundays, was necessary. During the six-month period that Plaintiff was assigned to a Sunday-Thursday schedule, Plaintiff was the only welder in her department on Sundays. Pl. Dep. 28:13-29:20. If Plaintiff was absent, Defendant had to find a substitute and pay the substitute overtime. Pl. Dep. 29:18-30:4.

Plaintiff nevertheless argues that her proposed variation to the attendance policy constitutes a reasonable accommodation. It does not. Plaintiff's desired accommodation was to never have to work on Sundays. In essence, she asked for a "reasonable accommodation" that exempted her from an essential function of her job. Plaintiff fails to present any issue of fact to suggest that she could perform the essential functions of her job without ever working on Sundays.

Plaintiff alternatively focuses on Defendant's alleged failure to engage in the interactive process to determine a reasonable accommodation. This argument fails as well. Under the ADA and Oregon law, once an employer becomes aware of an employee's disability and need for accommodation, the employer must engage in an "interactive process" designed to "identify and implement appropriate reasonable accommodations." Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001); see also Or. Admin. R. 839–0060206(4) (requiring the employer to engage in interactive process). "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." Humphrey, 239 F.3d at 1137. An individual is not required to accept an accommodation. 29 C.F .R. § 1630.9(d). However, an employer is not obligated to provide a qualified individual with the accommodation of their choice upon demand. Vawser v. Fred Meyer, Inc., 19 F. App'x 722, 724 (9th Cir. 2001). If an

individual rejects a reasonable accommodation "that is necessary to enable the individual to perform the essential functions of the position held or desired, and [the individual] cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified." 29 C.F.R. § 1630.9(d).

Plaintiff's disability discrimination claims fail because Defendant sufficiently engaged in the ADA-mandated interactive process with Plaintiff regarding reasonable accommodations. As discussed already in this opinion, Defendant offered Plaintiff multiple variations on her schedule so that she could attend both church and work on Sundays. Plaintiff never tried any of these options. Nor did Plaintiff suggest any other accommodation. Plaintiff simply said she could not work on Sundays.

Because Plaintiff never asked for any disability-related accommodation and only asked for Sundays off in their entirety, there was no accommodation that would allow Plaintiff to perform the essential functions of her position. After Plaintiff rejected Defendant's reasonable accommodations, she was no longer a qualified individual under the ADA. See C.F.R. § 1630.9(d). In other words, Plaintiff is unable to establish the second element of her *prima facie* case. Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's disability claims.

## IV.    Retaliation Claims (Claims 7, 8, and 9)

Plaintiff concedes her Eighth Claim—Retaliation under ORS 659A.230 because she cannot present evidence that those who decided to terminate her were aware of her BOLI/EEOC complaint prior to termination. Plaintiff proceeds with Claims 7 and 9 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Oregon Whistleblower Law, ORS 659A.199. Because Plaintiff raises genuine issues of fact as to whether she engaged in protected

activity and whether there is a causal link between this activity and an adverse employment

action, the Court denies summary judgment on these claims.

Under Title VII, it is unlawful for an employer to discriminate against an employee

because she has opposed an unlawful employment practice or filed a charge. 42 U.S.C. § 2000e-

3(a). Oregon's whistle-blower law prohibits employers from discriminating or retaliating against

employees who "in good faith reported information that the employee believes is evidence of a

violation of a state or federal law, rule or regulation." Or. Rev. Stat. § 659A.199(1).

Plaintiff's federal and state claims are analyzed under the same framework.[10] Plaintiff

must show that: (1) she engaged in protected activity; (2) she was subjected to adverse action;

and (3) there is a causal link between the protected activity and the adverse action. Brooks v.

City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000). Thereafter, the burden of production shifts

to the employer to present legitimate reasons for the adverse employment action. Id. Once the

employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to

whether the reason advanced by the employer was a pretext. Id.

Plaintiff alleges that Defendant retaliated against her for "complaining to defendant's

agents regarding prohibited conduct." Compl. ¶ 81, 91.[11] Defendant contends that Plaintiff's

claim about "prohibited conduct" or "defendant's actions" is too vague to constitute "protected

activity." See Compl. ¶¶ 81, 91. Plaintiff's Complaint is vague and "[i]t is not the district court's

job to sift through the record to find admissible evidence in support of a non-moving party's

---

[10] As the Court stated in Neighorn v. Quest Health Care, 870 F. Supp. 2d 1069, 1102 (D. Or. 2012), although Oregon courts do not use the McDonnell Douglas burden-shifting framework to analyze retaliation claims, that framework is a procedural device, not a substantive rule. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090–93 (9th Cir. 2001). Therefore, a plaintiff's claim under ORS § 659A.199 must be analyzed under this framework. See Lucke v. Multnomah Cnty., No. CV–06–1149–ST, 2008 WL 4372882, at *23 (D. Or. Sept. 22, 2008); Villigrana v. Collins Pine Co., Civil No. 06–1628–CL, 2008 WL 140723, at *1 (D. Or. Jan. 11, 2008).
[11] While Claims 7 and 9 also allege that Defendant retaliated against Plaintiff for filing a BOLI/EEOC Complaint, the Court assumes she concedes this aspect of the claims based on her concession of Claim 8.

case." Claar v. Burlington N. R.R. Co., 29 F.3d 499, 504 (9th Cir. 1994) (quoting Celotex Corp., 477 U.S. at 324. Nevertheless, the Court finds sufficient information to create an issue of fact as to whether Plaintiff engaged in protected activity. For example, Plaintiff's declaration states:

> After Ms. Rhodes became involved and questioned my use of leave in 2012 I frequently told her of my condition, my need for leave for my condition and that the denial of my leave aggravated my condition. I told Ms. Rhodes that I did not believe she was properly addressing my need for protected leave or my rights to protected leave.

Pl. Decl. ¶ 21. The Court finds that Plaintiff sufficiently alleges that she engaged in protected activity by reporting alleged violations of FMLA and OFLA.

Defendant also argues that Plaintiff cannot show a causal link between the protected activity and the adverse action, her termination. However, Plaintiff argues that Defendant took other adverse employment actions against Plaintiff in addition to termination. First, Plaintiff asserts that Defendant violated its own attendance policy as to Plaintiff's absence on March 14, 2013. Plaintiff used protected family leave (sick child leave) on March 11-13, 2013. On March 14, 2013, she called in more than one hour after the start of her shift because her anxiety and stress, exacerbated by an automobile collision on March 13, made it physically impossible for her to get up on time for work. Atwood Decl. ¶ 19. Defendant gave Plaintiff an "occurrence" for that day, which put Plaintiff over the allowed number of absences and led to her termination. Plaintiff raises an issue of fact as to whether this day should have counted as protected leave and, thus, whether Defendant violated its own policy and was retaliatory.

Second, Plaintiff argues that Defendant denied Plaintiff leave available to other employees. Pl. Resp. 49. Plaintiff alleges that Defendant subjected her to different Sabbath day work requirements than other employees on Monday-Friday shifts. This is a different allegation than what Plaintiff alleges as far as "similarly situated" employees for the purposes of her religious discrimination claims. Here, she says that once she returned to a Monday-Friday

schedule, she requested to skip Sunday overtime work but was not given the same options as other employees.

Third, Plaintiff argues that Defendant arbitrarily enforced the attendance policy. In support of this assertion, Plaintiff submits the declaration of Plaintiff's husband, a former employee of Defendant. Defendant objects to the submission as inadmissible.[12]

Evidence submitted in a motion for summary judgment must satisfy the requirements of Federal Rule of Civil Procedure 56. Fraser v. Goodale, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Rule 56(e) provides, in pertinent part, that "[a] supporting or opposing affidavit must ... set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e). Under that standard, the court may consider evidence on summary judgment if the party offering it could present the evidence in an admissible form at trial. Fraser, 342 F.3d at 1037.

The declaration of David Atwood, Plaintiff's husband and a former employee of Defendant, states that in Mr. Atwood's experience as a former employee in a "management/supervisor position," he saw that Defendant "did not always terminated [sic] employees who accrued 11 points in a 365 day period" and its attendance policy "was not uniformly enforced or applied." D. Atwood Decl. ¶¶ 2-7. Mr. Atwood's declaration is not hearsay because it is based upon his observations as an employee of Defendant rather than out of court statements offered for the truth of the matter asserted. Therefore, it is admissible.

Plaintiff's Complaint and declaration, supported by Mr. Atwood's declaration regarding Defendant's arbitrary enforcement of the attendance policy, create an issue of fact as to

---

[12] Defendant also objects to the submission of the declaration of Plaintiff's former counsel, Kerry Smith, who represented other employees in proceedings against Defendant. Because Mr. Smith's declaration has no bearing on the Court's decision regarding Plaintiff's retaliation claims, the Court declines to address the admissibility of Mr. Smith's declaration.

Plaintiff's retaliation claims. Therefore, Defendant's motion for summary judgment on Claims 7 and 9 is denied.

## V.      State Wrongful Discharge (Claim 10)

Plaintiff alleges two counts of wrongful discharge. The first is based on her use of FMLA/OFLA protected leave. The second is based on the exercise of her rights under ORS § 659A.199 and ORS § 659A.230.

A.  Count 1—Wrongful discharge based on FMLA/OFLA leave

Plaintiff alleges that a substantial factor in the negative treatment Plaintiff received was "her use of OFLA/FMLA rights, the interference with her OFLA rights, and/or her assertion of her OFLA rights as Defendant's employee." Compl. ¶ 98.

Under Oregon law an employer may discharge an employee at any time for any reason unless doing so violates a contractual, statutory, or constitutional requirement. Yeager v. Providence Health Sys. Or., 195 Or. App. 134, 140, 96 P.3d 862 (2004). The tort of wrongful discharge is a narrow exception to this general rule. See Dew v. City of Scappoose, 208 Or. App. 121, 140, 145 P.3d 198 (2006). The tort of wrongful discharge was not intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question is unacceptable and no other remedy is available. Reddy v. Cascade Gen., Inc., 227 Or. App. 559, 567, 206 P.3d 1070 (2009) (citation omitted). See also Draper v. Astoria Sch. Dist. No. 1C, 995 F. Supp. 1122, 1128 (D. Or. 1998).

"The elements of a wrongful discharge claim are simple: there must be a discharge, and that discharge must be 'wrongful.' " Garmon v. Plaid Pantries, No. 3:12-CV-1554-AC, 2013 WL 3791433, at *25 (D. Or. July 19, 2013) (citing Moustachetti v. Oregon, 319 Or. 319, 325 (1994). Oregon courts have recognized two circumstances that give rise to the common-law tort of

wrongful discharge: (1) discharge for exercising a job-related right of important public interest and (2) discharge for complying with a public duty. Examples of the first category include discharge for filing a worker's compensation claim, <u>Brown v. Transcon Lines</u>, 284 Or. 597, 588 P.2d 1087 (1978), and resisting sexual harassment by a supervisor, <u>Holien v. Sears, Roebuck & Co.</u>, 298 Or. 76, 689 P.2d 1292 (1984). Examples of the second category include discharge for serving on jury duty, <u>Nees v. Hocks</u>, 272 Or. 210, 536 P.2d 512 (1975); for reporting patient abuse at a nursing home, <u>McQuary v. Bel Air Convalescent Home, Inc.</u>, 69 Or. App. 107, 684 P.2d 21 (1984); and for refusing to sign a false report regarding a fellow employee's work-related conduct, <u>Delaney v. Taco Time Int'l Inc.</u>, 297 Or. 10, 681 P.2d 114 (1984).

As to proving that the discharge was wrongful, the plaintiff must establish a causal connection between the discharge and the exercise of her employment related right. <u>Garmon</u>, 2013 WL 3791433, at *25 (citing <u>Estes v. Lewis and Clark College</u>, 152 Or. App. 372, 381 (1998) (citing <u>Shockey v. City of Portland</u>, 313 Or. 414, 422–23 (1992)). "Invoking rights to benefits under FMLA and OFLA is an employment-related right that may serve as the basis for a wrongful discharge claim." <u>Lawson v. Walgreen Co.</u>, No. CV. 07-1884-AC, 2009 WL 742680, at *12 (D. Or. Mar. 20, 2009).

To the extent that Plaintiff's claim is based on the allegation that Defendant terminated her for taking FMLA/OFLA leave, the Court grants summary judgment to Defendant. <u>Larmanger v. Kaiser Found. Health Plan of the Nw.</u>, 895 F. Supp. 2d 1033, 1045-46 (D. Or. 2012) <u>aff'd</u>, 585 F. App'x 578 (9th Cir. 2014), addresses a similar claim and explains that: "Under Oregon law, . . . "a wrongful discharge claim is not available to a plaintiff who alleges that [he] was discharged in violation of a right in contrast to being discharged for pursuing that right." <u>See also</u> <u>Dunn v. CSK Auto, Inc.</u>, No. CV–05–116–HU, 2006 WL 1491444, at *6 (D. Or. May 22, 2006).

As to Plaintiff's remaining allegation—that Defendant terminated her for asserting her OFLA rights—Plaintiff must establish a causal connection between the discharge and the assertion of her FMLA/OFLA rights. Plaintiff's declaration creates a sufficient issue of fact as to whether she was terminated for asserting her rights. See Pl. Decl. ¶ 21. Therefore, the Court denies Defendant's summary judgment as to this part of Plaintiff's claim.

B. Count 2—Wrongful discharge based on exercising Plaintiff's rights under ORS § 659A.199 and ORS § 659A.230

Plaintiff essentially concedes Count 2 of her wrongful discharge claim, due to case law cited in Defendant's Motion. In a case directly on point, Shapiro v. Am. Bank [FSB], No. 3:12-CV-1358-AC, 2013 WL 6157266, at *8 (D. Or. Nov. 21, 2013), Judge Acosta discussed the precedent in this district and explained that a plaintiff may not bring a wrongful discharge claim based on ORS § 659A.199 and ORS § 659A.230 because adequate statutory remedies exist under those two laws. Plaintiff in this case states that, "to preserve her argument, [she] incorporates the plaintiffs' arguments in Shapiro and the cases cited in Shapiro." Pl.'s Resp. 52. Those arguments have already been rejected by several judges in this district. See, e.g., Franklin v. Clarke, No. 10–CV–382–CL, 2011 WL 4024638, at *11 (D. Or. Sept. 09, 2011); Duran v. Windows Prod. Inc., No. 07–cv–125–ST, 2011 WL 1261190, at *2 (D. Or. Mar. 29, 2011). The Court sees no reason to make new law here, especially when Plaintiff offers no new arguments or reasoning. Therefore, Defendant is granted summary judgment on Count 2 of Claim 10.

///

///

29 - OPINION & ORDER

**CONCLUSION**

Based on the foregoing, Defendant's motion for summary judgment [30] is granted and

denied in part as follows:

1.  Defendant's motion on Plaintiff's Claims 1 and 2 alleging violations of FMLA and
    OFLA is DENIED;

2.  Defendant's motion on Plaintiff's Claims 3 and 4 alleging religious discrimination is
    GRANTED;

3.  Defendant's motion on Plaintiff's Claims 5 and 6 alleging discrimination based on
    disability is GRANTED;

4.  Defendant's motion on Plaintiff's Claims 7 and 9 of retaliation under Title VII and ORS
    659A.199 are DENIED;

5.  Defendant's motion on Plaintiff's Claim 8 of retaliation under ORS 659A.230 is
    GRANTED; and

6.  Defendant's motion on Plaintiff's Claim 10 of wrongful discharge is GRANTED except
    to the extent the claim is premised upon Defendant terminating Plaintiff for asserting her
    rights under OFLA.


IT IS SO ORDERED.


Dated this _____ 4 _____ day of _____ June _____, 2015.


_____ Marco Hernández _____

MARCO A. HERNÁNDEZ
United States District Judge


30 - OPINION & ORDER