IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAIMEE ATWOOD,

                   Plaintiff,

    v.

PCC STRUCTURALS, INC.,

                   Defendant.

No. 3:14-cv-00021-HZ

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

David D. Park
ELLIOT & PARK
0324 SW Abernathy St.
Portland, OR 97239

Megan R. Lemire
LEMIRE & HIRANO, PC
0324 SW Abernethy St.
Portland, OR 97239

       Attorneys for Plaintiff

Karen L. O'Connor
Melissa J. Healy
STOEL RIVES, LLP
900 SW Fifth Ave., Suite 2600
Portland, OR 97204

       Attorneys for Defendant

1 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

HERNÁNDEZ, District Judge:

Plaintiff Jaimee Atwood brought this employment discrimination action against her former employer, Defendant PCC Structurals, Inc. Plaintiff brought claims under state and federal law, alleging interference with the federal Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654; retaliation based on the use of FMLA; interference with the Oregon Family Leave Act (OFLA), O.R.S. 659A.150–659A.186; whistleblower retaliation under ORS 659A.199 for engaging in the protected activity of reporting alleged violations of FMLA; and discrimination based on religion and disability. Plaintiff also brought an action for damages under state law for common law wrongful discharge for invoking the right to OFLA leave.

On November 17-20, 2015, the FMLA claims, the whistleblower claim, and the wrongful discharge claim were tried to a jury. The Court granted judgment as a matter of law to Defendant on the FMLA retaliation claim, the whistleblower claim, and the wrongful discharge claim. Therefore, the only remaining claim for the jury to decide was Plaintiff's FMLA interference claim. Plaintiff's OFLA interference claim was simultaneously tried to the Court.[1]

The jury returned a verdict in favor of Plaintiff on the FMLA interference claim and awarded $5,000 in economic damages. This constitutes the Court's Findings of Fact and Conclusions of Law on the OFLA interference claim. Fed. R. Civ. P. 52(a). In addition, on December 16, 2015, this Court heard argument from the parties regarding Plaintiff's entitlement to an award of liquidated damages, prejudgment interest, and front pay. For the reasons that follow, the Court awards Plaintiff liquidated damages and prejudgment interest. The Court declines to award Plaintiff any front pay.

///

_____

[1] Defendant was granted summary judgment on all other claims. Opinion & Order, June 4, 2015, ECF 55.

2 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

I.       **OFLA Interference Claim**

The Ninth Circuit recently reaffirmed the principle that "where legal claims tried by the jury and equitable claims tried by the court are 'based on the same set of facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'" Sanders v. City of Newport, 657 F.3d 772, 783 (9th Cir. 2011) (FMLA/OFLA claims) (quoting Miller v. Fairchild Indus., Inc., 885 F.2d 498, 507 (9th Cir. 1989)).

OFLA is to "be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Family and Medical Leave Act of 1993." O.R.S. 659A.186(2). "Consistent with this legislative declared intent, the Oregon courts have looked to federal law when interpreting OFLA." Sanders, 657 F.3d at 783 (citing Yeager v. Providence Health Sys. Or., 195 Or. App. 134, 96 P.3d 862, 866 (2004); Centennial Sch. Dist. No. 28J v. Or. Bureau of Labor & Indus., 169 Or. App. 489, 10 P.3d 945, 951–52 (2000)). Accordingly, the legal standards for the state law OFLA claim parallel those for the FMLA claim.

The jury in this case, in finding for Plaintiff on the FMLA interference claim, determined that Defendant interfered with Plaintiff's rights to family medical leave by denying her leave to which she was entitled and/or by terminating her employment due to six absence "occurrences" accrued as a result of the denials of leave. The Court is bound by the jury's factual determinations.

Plaintiff asks the Court, in addition, to find that Defendant violated OFLA when it penalized Plaintiff for calling in late on March 14, 2013. Because this Court, based on the jury's verdict, already concludes that Defendant interfered with Plaintiff's OFLA rights, the Court finds it unnecessary to decide whether or not the incident on March 14 constituted additional interference. Whether or not Defendant violated OFLA on March 14, 2013, does not impact this

Court's decision to rule in Plaintiff's favor on the OFLA interference claim. Additionally, the parties appear to agree that whether or not Defendant interfered with Plaintiff's OFLA rights on March 14, 2013 has no impact on the damages award or the remaining issues in this case.

As the jury did with the FMLA interference claim, the Court finds that Defendant interfered with Plaintiff's OFLA rights by denying her leave to which she was entitled and/or by terminating her employment.

## II.     Liquidated Damages

The FMLA contains a "liquidated damages" provision, subjecting an employer who violates the Act to liquidated damages equal to the amount of actual damages and interest, unless the employer can prove that its employment action was taken in "good faith" and that it had "reasonable grounds for believing that [its action] was not a violation." 29 U.S.C. § 2617(a)(1)(A)(iii); see also Traxler v. Multnomah Cty., 596 F.3d 1007, 1015 (9th Cir. 2010). "Under such circumstances, it is within the district court's discretion to limit damages to only the amount of actual damages and interest thereon." Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1130 (9th Cir. 2001).

The burden to avoid liquidated damages is on the employer. Traxler, 596 F.3d at 1016. A court that declines to award liquidated damages must make specific findings that the employer's FMLA violation was in good faith and that the employer had reasonable grounds for believing that its conduct did not violate the FMLA.

Plaintiff asks the Court to award $5,000 in liquidated damages, an amount equal to the jury's award of economic damages for back pay, plus prejudgment interest. Defendant argues that liquidated damages are unwarranted because it undertook its FMLA obligations in good faith and reasonably believed its actions did not violate the FMLA.

Defendant identifies a number of "events" which, it argues, establish that its actions were reasonable and were taken in good faith, specifically:

- Plaintiff never provided a complete and sufficient medical certification, as required by law, stating why it was medically necessary for her to take the entire day off on Sundays.

- Defendant properly sought clarification of Plaintiff's medical certification by writing to Dr. Erickson, outlining the specific information needed, and providing Plaintiff with a copy of the letter.

- Defendant denied Plaintiff FMLA leave only after attempting—and failing—to obtain information about why Plaintiff's full-day Sunday absences were medically necessary.

- Defendant appropriately denied FMLA protection for Plaintiff's full-day Sunday absences because Defendant sought a second medical opinion and the opinion stated that Plaintiff did not need to take FMLA leave at all.

Def.'s Memo. 4-5, ECF 131.

Accepting Defendant's characterization of these key "events," however, would require this Court to contradict the jury's factual findings. For example, the issue of whether or not Plaintiff provided a sufficient medical certification stating why it was medically necessary for her to be off on Sundays was a key factual issue for the jury to resolve. As this Court noted in its Opinion & Order regarding summary judgment:

> There is a genuine issue of material fact as to whether it was medically necessary for Plaintiff to be off on Sundays. Plaintiff provided Defendant with multiple opinions by Dr. Erickson. Defendant obtained its own expert report refuting Dr. Erickson's opinion. Thus, there is an issue of fact that is properly resolved by a jury, not by this Court in a motion for summary judgment.

Opinion & Order, June 4, 2015, ECF 55. Similarly, whether or not Defendant "appropriately denied FMLA protection" was the precise question posed to the jury in the verdict form: "Did Defendant interfere with Plaintiff's rights to FMLA leave by denying her leave to which she was entitled and/or by terminating her employment?" See Verdict Form, ECF 128. For this Court to

agree with Defendant that it "appropriately" denied Plaintiff FMLA leave would be to improperly disregard the jury's verdict for Plaintiff. See, e.g., Arban v. W. Pub. Corp., 345 F.3d 390, 408 (6th Cir. 2003) (reversing the district court's decision to deny liquidated damages because the basis for the court's decision "disregarded the jury's finding"); Traxler v. Multnomah Cty., No. 06-1450-KI, 2010 WL 3069340, at *1 (D. Or. Aug. 2, 2010) (rejecting the employer's argument regarding good faith because "[t]he jury's award . . . makes it clear that the jury did not believe all of this testimony").

The Court recognizes that, at the jury trial, the Court granted Plaintiff's motion in limine to exclude evidence that any defense witness conferred with legal counsel regarding any decision in this case. Defendant asserted in its response to Plaintiff's motion in limine that it did not seek to introduce evidence of the content of defense witnesses' communications with counsel, nor would witnesses testify that counsel approved Defendant's actions. Def.'s Resp. Pl. Mot. Limine 2. Rather, Defendant wanted to "introduce the mere fact that it consulted with counsel." Id. at 3. While the Court correctly concluded that such evidence was irrelevant to the case before the jury, such evidence may have been relevant to the Court as to Defendant's argument regarding good faith. However, Defendant did not mention this issue at the court trial, nor did Defendant make an offer of proof on this issue. Defendant's footnote in its memorandum, submitted late in the afternoon the day before the court trial, was insufficient to alert the Court of a renewed objection or a motion to introduce the previously excluded evidence. See Def.'s Memo. 4, fn. 1, ECF 131.

Furthermore, even if the Court had considered "the mere fact" that defense witnesses had consulted with counsel, it would not change this Court's decision to award liquidated damages to Plaintiff. Such evidence would not meet Defendant's burden to show that its actions were taken in good faith and were reasonable. See Serv. Employees Int'l Union, Local 102 v. Cty. of San

Diego, 60 F.3d 1346, 1355-56 (9th Cir. 1994) (finding employer acted in good faith when it "relied on substantial legal authority . . . as well as consulting experts and the DOL in an attempt to comply with the law"); Hultgren v. County of Lancaster, 913 F.2d 498, 506–510 (8th Cir. 1990) (the uncertainty about the application of the law and consultation with counsel shed light on whether the employer had an honest intention to comply). This is not a case in which an employer technically violated the statute but soon set things straight. See, e.g., Hoge v. Honda of America Mfg., Inc., 384 F.3d 238 (6th Cir. 2004). Nor does Defendant argue that it misunderstood its duties under the Act. See, e.g., Traxler v. Multnomah Cty., No. 06-1450-KI, 2010 WL 3069340, at *1 (D. Or. Aug. 2, 2010). Rather, the jury found that Defendant interfered with Plaintiff's FMLA rights and, due to this interference, terminated Plaintiff. Thus, in light of the Court's discretion and the presumption under the FMLA in favor of awarding liquidated damages, the Court declines to find that Defendant acted in good faith and had reasonable grounds for believing that its conduct did not violate the FMLA. Accordingly, the Court awards Plaintiff liquidated damages.

## III.    Prejudgment Interest

Under the FMLA, an employee is entitled to interest, "calculated at the prevailing rate," on the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the [FMLA] violation." See 29 U.S.C. § 2617(a)(1)(A). "[M]oney has a time value, and prejudgment interest is therefore necessary in the ordinary case to compensate a plaintiff fully for a loss suffered at time t and not compensated until t + 1." Hopi Tribe v. Navajo Tribe, 46 F.3d 908, 922 (9th Cir. 1995) (internal citations omitted). Thus, an award of pre-judgment interest serves as an element of compensation rather than a penalty. Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 974, 988 (9th Cir. 2001).

"Generally, the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." Blankenship v. Liberty Life Assur. Co. of Boston, 486 F.3d 620, 628 (9th Cir. 2007) (quoting Grosz–Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1164 (9th Cir. 2001); see also Asdale v. Int'l Game Tech., 763 F.3d 1089, 1093 (9th Cir. 2014) (noting that post-judgment interest rate is often used for prejudgment interest). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Blankenship, 486 F.3d at 628 (quoting Blanton v. Anzalone, 813 F.2d 1574, 1576 (9th Cir. 1987)).

Plaintiff argues that the equities of this case require the Court to deviate from the standard rate prescribed by 28 U.S.C. § 1961(a). According to Plaintiff, applying the federal statutory rate of interest would not keep pace with inflation since 2013, when Plaintiff was terminated. Defendant does not respond to Plaintiff's argument.

The Court finds that Plaintiff has not demonstrated substantial evidence sufficient to require deviation from the standard rate. In Blankenship, the district court awarded prejudgment interest at a rate higher than prescribed in 28 U.S.C. § 1961 based on evidence showing that, in the absence of disability payments, the claimant was forced to rely on personal funds to pay living expenses. Had the claimant not used those personal funds to pay living expenses, the claimant would have invested the personal funds in a mutual fund that had a high rate of return. Id. The Ninth Circuit concluded that this evidence satisfied the requirement for substantial evidence showing that the equities of the case required a different interest rate. Id. Such evidence, however, is absent in this case. If shifting interest rates were all that was required to demonstrate "substantial evidence," then the calculation of prejudgment interest in every case

would be based upon an average of annual interest rates, as Plaintiff urges, rather than a statutorily dictated rate.[2] The Court, therefore, awards prejudgment interest at the rate prescribed in 28 U.S.C. § 1961 on Plaintiff's economic damages verdict.

## IV. Front Pay

"[F]ront pay is an equitable remedy that must be determined by the court, both as to the availability of the remedy and the amount of any award. Traxler, 596 F.3d at 1011. "[F]ront pay is best understood as a substitute for the equitable remedy of reinstatement[.]" Id. Plaintiff requests an award of $161,518.87 in front-pay damages. Defendant asserts an "after-acquired evidence" defense based on information learned at trial regarding Plaintiff's misconduct when she was still employed by Defendant. In addition, Defendant argues that the Court should decline to award front pay because the jury only awarded Plaintiff a nominal amount of $5000 in back pay.

Where an employer discovers after termination that an employee engaged in "wrongdoing [] of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge[,]" the Supreme Court has held that "neither reinstatement nor front pay is an appropriate remedy." McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 362, 115 S. Ct. 879, 886, 130 L. Ed. 2d 852 (1995). It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds. Id.

The employer bears the burden of proof and, in order to avail itself of this defense, "must establish not only that it *could* have fired an employee for the later-discovered misconduct, but that it *would* in fact have done so." O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756,

---

[2] The Court also notes that the difference between the amount Plaintiff will receive by applying the rate prescribed by 28 U.S.C. § 1961(a) and the rate Plaintiff requested (1.033%) is nominal.

759 (9th Cir. 1996). "The inquiry focuses on the employer's actual employment practices, not just the standards established in its employee manuals, and reflects a recognition that employers often *say* they will discharge employees for certain misconduct while in practice they do not." Id.

An employer is entitled to rely on sworn affidavits from its employees in proving that it would have discharged the plaintiff for the alleged misconduct. Id. at 762. Although an employer may not be able to prevail "based only on bald assertions that an employee would have been discharged for the later-discovered misconduct," the assertions may be corroborated by proof that the employer discharged other employees for the precise misconduct at issue, evidence of a company policy forbidding the conduct, or even common sense. Id. at 762. There is no requirement that the employer demonstrate the existence of a settled company policy requiring the termination of employees who engage in the conduct at issue.

Here, Defendant learned for the first time at trial that, when Plaintiff took a week of FMLA leave over the Labor Day holiday in 2012, she was really on vacation during that time. Plaintiff admitted that she had planned this vacation in advance and had purchased train tickets and football tickets that she did not want to waste. When Plaintiff's position as a lead welder was eliminated, she was no longer approved to take vacation that week and so she used family medical leave instead. At trial, Plaintiff testified that her absence was not for a serious health condition, was not medically necessary, and that her use of FMLA was wrong. Plaintiff also testified at the court trial that she understood when she signed her FMLA leave request form, she was obligated to tell the truth.

In light of Plaintiff's admission, Defendant moved at the court trial to amend the pleadings to assert an affirmative defense of after-acquired evidence.[3] Once a pretrial order has

---

[3] Cases discussing the defense suggest it should be specially pleaded. See, e.g., Red Deer v. Cherokee County, Iowa, 183 F.R.D. 642, 653 (N.D. Iowa 1999) (after-acquired evidence is affirmative defense

10 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

been entered pursuant to Rule 16(e) setting forth the parties and issues for trial, modifications are allowed "only to prevent manifest injustice." See Fed. R. Civ. P. 16(e). The district court should consider four factors in determining whether to modify the parties' pretrial order: (1) the degree of prejudice or surprise to the [parties] if the order is modified; (2) the ability of the [parties] to cure any prejudice; (3) the impact of the modification on the orderly and efficient conduct of the case; and (4) any degree of willfulness or bad faith on the part of the party seeking the modification. Estate of Holton ex rel Holton v. Terhune, 40 F. App'x 387, 390 (9th Cir. 2002) (citing Byrd v. Guess, 137 F.3d 1126, 1132 (9th Cir.1998)). It is the moving party's burden to show that a review of these factors warrants a conclusion that manifest injustice would result if the pretrial order is not modified. Id. (citing R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc., 835 F.2d 1306, 1308 (10th Cir. 1987)).

Here, the Court considers the Rule 16(e) factors and grants Defendant's motion to amend its answer to assert a defense of after-acquired evidence. While Plaintiff will certainly be prejudiced by the modification of the order, it should come as no surprise, given Plaintiff's testimony at trial. Plaintiff was given an opportunity to testify again at the court trial and could have clarified any of her testimony regarding the Labor Day holiday at that time. Furthermore, Plaintiff had the opportunity to cross-examine Kelly Rhodes, Defendant's witness, regarding the Defendant's policies and treatment of other employees who lied on leave request forms. There is no impact on the conduct of this case by allowing Defendant to assert this affirmative defense and the Court finds no bad faith on the part of Defendant in seeking this modification. On the other hand, "manifest injustice" would result by disallowing this amendment, given the

---

which must be pleaded); Doyle v. Gonzales, 2011 WL 2607167, at *1 (E.D. Wash. July 1, 2011) (defendant sought permission to amend answer to include affirmative defense of after acquired evidence); Stubbs v. Regents of University of California, 2007 WL 1532148, at *8 (E.D. Cal. May 25, 2007) (defense must be pleaded).

importance of Defendant's defense of after-acquired evidence on this Court's ruling regarding front pay. See, e.g., Estate of Holton, 40 Fed. App'x. at 391 (district court properly allowed amendment to the pretrial order at trial in order to avoid manifest injustice).

Therefore, the issue is whether Defendant establishes that it would have fired Plaintiff had it learned about her fraudulent leave request form for the week around the Labor Day holiday in 2012. Kelly Rhodes, employee relations specialist for Defendant, testified at the court trial that Defendant would have terminated Plaintiff. Ms. Rhodes testified that Defendant had fired other employees for lying on leave request forms. Plaintiff offered no evidence to refute Ms. Rhodes' testimony.

While Defendant cannot prevail "only on bald assertions," O'Day, 79 F.3d at 762, Ms. Rhodes' testimony is corroborated by language in the "Request for Family Medical Leave" form that Plaintiff signed, which clearly indicates that the employee certifies that all stated information is true and that misrepresentation of the reason for leave may result in discipline, including termination. See Def.'s Ex. 511 at 18. In addition, Ms. Rhodes' testimony is corroborated by common sense. As the Ninth Circuit found in O'Day, "there is nothing inherently incredible" about Defendant asserting that it would discharge an employee for falsifying FMLA leave forms such that the employee ended up with a paid week of vacation that she otherwise would not have received. As Plaintiff acknowledged in her testimony, taking FMLA leave for a vacation was "wrong" and this Court fails to see how any employee would understand that differently. In sum, the combination of Plaintiff's wrongdoing, Ms. Rhodes' testimony, the leave form language, common sense, and the complete absence of evidence to the contrary leads this Court to confidently conclude that Defendant would have fired Plaintiff had it known of her misconduct.

Furthermore, even if this Court did not accept Defendant's after-acquired evidence defense, it would deny Plaintiff's request for a front pay award. While the jury found that Defendant interfered with Plaintiff's FMLA rights, the jury awarded Plaintiff only $5,000 in back pay. Plaintiff had requested more than $100,000 in back pay for the period of time between her termination and trial (approximately two and a half years).

Plaintiff testified that her hourly wage at the time she was terminated was $25.85. This amount does not take into account benefits, bonuses, or any other elements of total compensation. The jury award of $5,000 in economic damages, then, corresponds to roughly 193 hours of work, or approximately 5 weeks of work. However, Plaintiff was terminated in April 2013 and did not enroll in school until 7-8 weeks later, and did not obtain other employment until August 2014.

The only reasonable interpretation of the jury's award is either that the jury found a nearly complete failure of Plaintiff to mitigate her damages or that the jury did not find it likely that Plaintiff's employment would have continued for long past her termination, even if no FMLA interference had occurred. In light of this interpretation, there is no way for the Court to conclude, as Plaintiff requests, that Plaintiff would have continued to be employed by Defendant for the next 18 years, until retirement. See Sanders, 657 F.3d at 783 (holding that the trial judge is required to follow the jury's implicit or explicit factual determinations). In fact, Plaintiff has failed to show any entitlement to front pay at all.

**CONCLUSION**

The Court finds for Plaintiff on her OFLA claim and grants an award of liquidated damages, including prejudgment interest as stated above. The Court denies Plaintiff's request for front pay.

Plaintiff is directed to prepare a judgment in accordance with this Findings of Fact and Conclusions of  Law and the jury verdict. After conferring with Defendant, Plaintiff shall submit the proposed judgment to the Court for review within 21 days of the date below. If the parties cannot agree on a judgment, Plaintiff shall notify the Court, which will then schedule a telephone conference with counsel.

IT IS SO ORDERED.

Dated this _____28_____ day of_____December_____, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge

14 - FINDINGS OF FACT AND CONCLUSIONS OF LAW