IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAIMEE ATWOOD,

                    Plaintiff,

     v.

PCC STRUCTURALS, INC.,

                    Defendant.

No. 3:14-cv-00021-HZ

OPINION & ORDER

David D. Park
ELLIOT & PARK
0324 SW Abernathy St.
Portland, OR 97239

Megan R. Lemire
LEMIRE & HIRANO, PC
0324 SW Abernethy St.
Portland, OR 97239

       Attorneys for Plaintiff

Karen L. O'Connor
Melissa J. Healy
STOEL RIVES, LLP
900 SW Fifth Ave., Suite 2600
Portland, OR 97204

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Jaimee Atwood brought this employment discrimination action against her former employer, Defendant PCC Structurals, Inc. Plaintiff brought claims under state and federal law, alleging interference with the federal Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654; retaliation based on the use of FMLA; interference with the Oregon Family Leave Act (OFLA), Oregon Revised Statue § (O.R.S.) 659A.150–659A.186; whistleblower retaliation under O.R.S. 659A.199 for engaging in the protected activity of reporting alleged violations of FMLA; and discrimination based on religion and disability. Plaintiff also brought a claim of common law wrongful discharge for invoking the right to OFLA leave.

On November 17-20, 2015, the FMLA claims, the whistleblower claim, and the wrongful discharge claim were tried to a jury. Plaintiff's OFLA interference claim was simultaneously tried to the Court.[1] The Court granted judgment as a matter of law to Defendant on the FMLA retaliation claim, the whistleblower claim, and the wrongful discharge claim. Therefore, the only remaining claim for the jury to decide was Plaintiff's FMLA interference claim.

The jury returned a verdict in favor of Plaintiff on the FMLA interference claim and the Court found for Plaintiff on her OFLA interference claim. The jury awarded Plaintiff $5,000 in economic damages. In addition, on December 16, 2015, the Court heard argument from the parties regarding Plaintiff's entitlement to an award of liquidated damages, prejudgment interest, and front pay. The Court awarded Plaintiff $5,000 in liquidated damages and prejudgment interest, but declined to award Plaintiff any front pay.

---

[1] Defendant had previously been granted summary judgment on all other claims. Opinion & Order, June 4, 2015, ECF 55.

Plaintiff now moves for $206,480.63 in attorney's fees and $29,739.48 in costs.[2] For the reasons explained below, Plaintiff's motion is granted in part. Plaintiff is awarded $111,790.15 in fees and $28,523.88 in costs.

## STANDARDS

When an employee prevails on an FMLA claim, the court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant. 29 U.S.C. § 2617(a)(3); see also O.R.S. 659A.885(1), (2) (authorizing the same for OFLA claim).

## I.   Attorney's Fees

Under a fee-shifting statute, such as 29 U.S.C. § 2617, the "lodestar" method is used to calculate the attorney's fee award. Staton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003). The court first multiplies the number of hours the prevailing party reasonably expended on the litigation times a reasonable hourly rate, in order to determine the "lodestar" amount. Id. If circumstances warrant, the court then adjusts the lodestar to account for the Kerr factors not subsumed within the initial lodestar calculation. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975)). Id.[3] A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and therefore,

---

[2] The requested fees include payment for hours initially requested in Plaintiff's Motion for Attorney's Fees, ECF 138, and additional hours for time reasonably expended in preparing a reply to Defendant's response to Plaintiff's motion. See Lemire Decl. Supp. Reply 2, ECF 151; Park Supp. Decl. 5, ECF 153. Time spent by counsel in establishing the right to a fee award is compensable. Davis v. City of San Francisco, 976 F.2d 1536, 1544 (9th Cir. 1992). The Court reduces the fees for time spent on the fee petition by the same percentage as the overall lodestar reduction. See Schwarz v. Secretary of Health & Human Services, 73 F.3d 895, 909 (9th Cir. 1995)("[A] district court does not abuse its discretion by applying the same percentage of merits fees ultimately recovered to determine the proper amount of the fees-on-fees award.").

[3] Factors subsumed within the lodestar include the novelty and complexity of the issues, special skill and experience of counsel, quality of the representation, results obtained, and the superior performance of counsel. D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1383 (9th Cir. 1990).

it should only be enhanced or reduced in "rare and exceptional cases." <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 565 (1986).While it is not necessary to detail every numerical calculation, and across-the-board percentage adjustments are permissible, the court must provide "enough of an explanation to allow for meaningful review of the fee award." <u>Sorenson v. Mink</u>, 239 F.3d 1140, 1146 (9th Cir. 2001).

## II.    Costs

Under Federal Rule of Civil Procedure 54, costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Rule 54 creates a presumption in favor of awarding costs to the prevailing party. <u>E.g.</u>, <u>Ass'n of Mexican–Am. Educators v. California</u>, 231 F.3d 572, 592 (9th Cir. 2000). "[I]f a district court wishes to depart from that presumption, it must explain why so that the appellate court will be able to determine whether or not the trial court abused its discretion ... [and] explain why a case is not ordinary." <u>Id.</u> at 594. To rebut the presumption, the court may consider "the losing party's limited financial resources, misconduct on the part of the prevailing party . . . the importance and complexity of the issues, the merit of the plaintiff's case, . . . and the chilling effect on future . . . litigants of imposing high costs." <u>Save Our Valley v. Sound Transit</u>, 335 F.3d 932, 945 (9th Cir. 2003) (citations omitted). The district court, however, "needs no affirmatively expressed reason to tax costs. Rather, it need only conclude that the reasons advanced by the party bearing the burden—the losing party—are not sufficiently persuasive to overcome the presumption." <u>Id.</u> at 946.

Costs taxable under Rule 54(d) "are limited to those set forth in 28 U.S.C. §§ 1920 and 1821[.]" <u>Twentieth Century Fox Film Corp. v. Entm't Distrib.</u>, 429 F.3d 869, 885 (9th Cir. 2005). Section 1920 lists the specific items a prevailing party may recover as costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920(1)-(6). The district court retains broad discretion to decide how much to award, if anything. Padgett v. Loventhal, 706 F.3d 1205, 1209 (9th Cir. 2013); see also Arboireau v. Adidas Salomon AG, No. 01–105–ST, 2002 WL 31466564, at *4 (D. Or. June 14, 2002) (trial judge has "wide discretion" in awarding costs under Rule 54(d)(1)).

## DISCUSSION

### I.    Amount of Attorney's Fees

#### a.  Hours Reasonably Expended

It is the fee claimant's burden to demonstrate that the number of hours spent on the case was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc., 886 F.2d 1545, 1557 (9th Cir. 1989) ("Plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [ ] claims.").

Plaintiff seeks compensation for 113.5 hours of work performed by attorney Kerry Smith, who passed away unexpectedly in the middle of this litigation. Pl. Mot. Att'y Fees 5, ECF 138. Plaintiff reduced the hours claimed by 15% to account for work on claims dismissed on summary judgment. Id. Plaintiff also excluded hours for time attributed to Mr. Smith's secretary

and added hours for time based on attorney Megan Lemire's estimate of unbilled work by Mr. Smith. <u>Id.</u>

In addition, Plaintiff seeks compensation for 409.6 hours of work completed by attorney David Park and 334.25 hours of work completed by Ms. Lemire.[4] <u>Id.</u> at 3-4. Both Mr. Park and Ms. Lemire declare that they exercised good billing judgment to exclude excessive, redundant, or otherwise unnecessary time and deducted time for duplicative attorney time, time spent on unsuccessful claims prior to summary judgment, billing errors, mentoring time, and administrative time. Park Decl. ¶ 7, ECF 139; Lemire Decl. ¶ 12, ECF 140. Despite these voluntary reductions, Defendant argues that the amount of time billed is unreasonable.

Defendant objects to several categories of time spent by Plaintiff's counsel. Without repeating in detail each of Defendant's objections and Plaintiff's responses, the Court addresses each category of time and deducts time from Plaintiff's requested hours, as appropriate.

### i.    Time related to case transition

The Court deducts 4.25 hours of time from Mr. Park and 1.2 hours of time from Ms. Lemire to account for administrative and logistical tasks associated with the transition of the case from Mr. Smith to Mr. Park.[5]

### ii.    Time spent preparing for summary judgment oral argument

The Court deducts 11.25 hours from Mr. Park's time preparing for summary judgment, because his preparation was duplicative of Ms. Lemire's efforts. On the other hand, the Court declines Defendant's request to deduct time from Ms. Lemire's entries regarding her preparation. The issues presented at summary judgment involved complex regulations and Ms. Lemire's

---

[4] As discussed above, these hours include time spent in preparing the fee petition.
[5] The 4.5 hours reflect all of Mr. Park's entries characterized by Defendant as "time related to case transition" and the 1.2 hours account for Ms. Lemire's entries on 4/28/15 and 5/5/15. O'Connor Decl., Ex. 1, ECF 148.

presentation and responses to the Court's questions demonstrated her extensive preparation and knowledge of the law and facts. It was reasonable for her to spend 29.8 hours preparing.

      iii.   Time spent preparing for mediation

The Court denies Defendant's request to deduct time Ms. Lemire and Mr. Park spent preparing the mediation statement. It was reasonable for Ms. Lemire to spend 12.90 hours and for Mr. Park to spend 15.90 hours writing the mediation memorandum and preparing for mediation.

      iv.  Time spent on witnesses who were not called or who were unnecessary at trial

Defendant opposes Plaintiff's request for fees for time spent on tasks related to the following witnesses who were never identified as witnesses by either party or called at trial: Dr. Glass, John Powelson, Nikki McKee, Jerry Harris, Ken Edwards, Paul McDonald, Todd Haugen, and Scott Tana. In addition, Defendant opposes the fees for time sought related to drafting the witness statements and direct examination outlines for Heidi Mason and Homero Caballero, whose testimony the Court ordered stricken after granting Defendant's Motion for Judgment as a Matter of Law on the lone claim for which their testimony was germane.

The mere fact that a witness did not testify does not render time spent with such a witness unreasonable. Plaintiff represents that investigating these witnesses was a reasonable and ordinary component of trial preparation. Furthermore, Dr. Glass' report was admitted as an exhibit at trial. Accordingly, the Court declines to reduce Plaintiff's fee request on this basis.

However, the Court agrees with Defendant that the time spent related to witnesses Heidi Mason and Homero Caballero should be excluded. Plaintiff used Ms. Mason's and Mr. Caballero's testimony to demonstrate that they were granted religious accommodations to miss working mandatory overtime on Saturdays or Sundays. Plaintiff offered this testimony to show

that when Defendant denied Plaintiff a full day off on Sundays, it treated Plaintiff differently than other employees who made similar requests. Plaintiff contended that such evidence was relevant to Plaintiff's FMLA-retaliation and whistleblowing claims, because it showed that Plaintiff was denied Sundays off in retaliation for asserting her rights under FMLA. Pl. Witness Statement 13, 19-20, ECF 66; Pl. Resp. Def. Mot. Limine 2, ECF 97.

However, the Court granted judgment as a matter of law to Defendant on Plaintiff's claims of FMLA retaliation, whistleblower retaliation, and wrongful discharge, because Plaintiff failed to present any evidence that she was terminated because she asserted her FMLA/OFLA rights or complained about alleged violations of the law. The Court struck the testimony of Ms. Mason and Mr. Caballero because it was not relevant to the remaining FMLA interference claim. Ms. Mason's and Mr. Caballero's testimony was solely used for unsuccessful claims based on different facts and legal theories than the successful FMLA/OFLA interference claims. See Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 901 (9th Cir. 1995) (explaining that if claims are distinctly different, "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee"). Accordingly, the Court deducts 3.1 hours from Ms. Lemire's requested time to account for the time she spent related to these two witnesses.

     v.   Time spent on pre-trial order

The 8.5 hours Mr. Park requests for preparing the pretrial order, which was 14 pages long and defined the scope of the issues to be tried, is reasonable.

     vi.   Time spent on trial memorandum

Defendant contends that the amount of time sought by Ms. Lemire and Mr. Park for preparation of the trial memorandum, nearly 70 hours, is unreasonable. The Court agrees. The Jury Trial Management Order, ECF 16, directed the parties to "[p]rovide a brief summary of all

material, factual and legal contentions along with the elements of each claim and/or defense. Trial memoranda are limited to 25 pages without leave of court." Nevertheless, Plaintiff sought and was granted leave to submit a 44-page memorandum that exceeded the "brief summary" requested or required. After reading the memorandum, the Court fails to see why Plaintiff was unable to provide a summary within the 25-page limit. The Court reduces the hours requested by 50%; therefore, the 60.6 hours requested by Ms. Lemire are reduced to 30.3 hours and the 9.25 hours requested by Mr. Park are reduced to 4.63.

       vii.   Time spent on Plaintiff's witness statement and trial testimony

Defendant contends that the amount of time requested for Mr. Park to prepare Plaintiff's witness statement and trial testimony, 36.75 hours, is excessive. Plaintiff's witness statement was 10 pages long and required significant detail regarding specific dates at issue in the case as well as evidence relevant to damages. Furthermore, the bulk of the time requested by Mr. Park was used to prepare Plaintiff, the most important witness in this case, to testify. The Court finds the time requested reasonable.

      viii.   Time spent on objections to PCC's exhibits

 Defendant contends that Plaintiff's counsel incurred duplicative and unnecessary time reviewing and drafting objections to Defendant's trial exhibits. The Court agrees that Mr. Park's time requested to "review each of defendant's exhibits" is duplicative with Ms. Lemire's entries, "review defendant's exhibits for objections" and "continue to review defendant's exhibits for objections." O'Connor Decl. Ex. 1 at 8. "To correct for this duplication by two attorneys, the higher billing rate of the two attorneys should be allowed." Miranda-Olivares v. Clackamas Cty., No. 3:12-CV-02317-ST, 2015 WL 5093752, at *8 (D. Or. Aug. 28, 2015). Accordingly, the Court deducts 3.1 hours of Ms. Lemire's time.

ix.   Time spent on opening statement

Defendant contends that Mr. Park's time sought on one day for preparing the opening statement, 15.5 hours, is not reasonable or necessary. Defendant also points out that Mr. Park bills for 2.75 additional hours on the same day for other trial-related tasks. The Court agrees that 15.5 hours is not reasonable, and reduces the amount by 50% to 7.75.

x.   Time spent on front pay claim and December 2015 Court hearing

Defendant asks that the 9.8 hours requested by Ms. Lemire related to the Court's follow-up hearing on OFLA liability and front pay determination be deducted as unnecessary and duplicative. Furthermore, Defendant requests that Mr. Park's request of 22.75 hours be denied because his time was directed almost exclusively to front pay, a claim on which Plaintiff was unsuccessful. The Court finds that 1.6 hours requested by Ms. Lemire to appear at the bench trial are duplicative of time claimed by Mr. Park and, therefore, the Court deducts these hours. Otherwise, the time requested is reasonable.

xi.   Time spent on expert witness Rodger Bufford

Defendant challenges the amount of time requested to prepare expert witness Professor Rodger Bufford, who testified that attending church was medical treatment for Plaintiff. The Court deducts 0.7 hours of Ms. Lemire's time because it is duplicative of time spent by Mr. Park. The 10.5 hours requested by Mr. Park is reasonable.

xii.   Time spent on internal charts, timelines, and memos

Defendant requests that time spent by Ms. Lemire preparing internal graphs, charts, and other research be reduced by half because spending 34.6 hours preparing such items for purely internal purposes is unnecessary. The Court agrees and reduces Ms. Lemire's hours on these tasks to 17.3.

xiii.   Time spent on administrative/miscellaneous tasks

Defendant contends that 3.8 hours of Mr. Park's time and 1.1 hours of Ms. Lemire's time should be deducted because they are associated with unsuccessful claims or miscellaneous tasks not properly taxed to Defendant. Plaintiff provides a justification for the need to spend 1.5 hours reviewing an older version of a Bureau of Labor and Industries handbook and 1 hour drafting a proposed judgment. As for the entries that Plaintiff does not respond to, the Court deducts 1.3 hours of Mr. Park's time and 1.1 hours of Ms. Lemire's time.

xiv.   Non-recoverable fees for Mr. Smith

Defendant argues that Plaintiff cannot recover 38.3 hours of Mr. Smith's time for which there is no documentation. Plaintiff does not respond. The Court deducts the 38.3 hours at issue.

**b. Reasonable Hourly Rate**

In determining the reasonable hourly rate, the Court determines what a lawyer of comparable skill, experience, and reputation could command in the relevant community. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); see also Robins v. Scholastic Book Fairs, 928 F. Supp. 1027, 1333 (D. Or. 1996). The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation. Jordan v. Multnomah Cnty., 815 F.2d 1258, 1263 (9th Cir. 1987). Judges in the District of Oregon use the Oregon State Bar Economic Survey ("OSB Economic Survey") as a benchmark for assessing the reasonableness of hourly billing rates. See Local Rule 54-3 Practice Tip ("[T]he court requests that fee petitions address the Economic Survey and provide justification for requested hourly rates higher than reported by the Survey."); Roberts v. Interstate Distrib. Co., 242 F.Supp.2d 850, 857 (D. Or. 2002) (in determining the reasonable

hourly rate, District of Oregon uses OSB Economic Survey as initial benchmark and attorneys should "provide ample justification" for deviating from the Survey rates). The most recent OSB Economic Survey was published in 2012.[6]

Plaintiff seeks fees based on an hourly rate of $400 for Mr. Park, $200-$225 for Ms. Lemire, and $350 for Mr. Smith. Plaintiff provides information as to the background and experience of these attorneys and also relies on the declaration of attorney Stephen L. Brischetto. Defendant objects to the requested hourly rates for Mr. Park and Ms. Lemire.

i.    Mr. Park

Mr. Park seeks $400 per hour. He has practiced law for 35 years. Park Decl.¶ 1. For approximately the last fifteen years, Mr. Park has focused his practice on the areas of police misconduct and employment litigation. Id. In addition to the Oregon State Bar, he is admitted to practice in this District and the Ninth Circuit. Id.

Mr. Brischetto opines that an hourly rate of $400 is reasonable for Mr. Park. Brischetto Decl. ¶ 10, ECF 142.  He states that Mr. Park is a skilled litigator capable of performing high-quality complex litigation. Id. at ¶ 6. According to Mr. Brischetto, Plaintiff needed a highly skilled and experienced trial lawyer to handle this case, given the length of the trial, the complexity of the issues, and the unfortunate circumstances of Mr. Smith's untimely death. Id. at ¶ 5.

According to the 2012 OSB Economic Survey, the average hourly rate for Portland attorneys with over thirty years of experience is $340 and the median hourly rate is $350. The 75th percentile hourly rate is $400.  Defendant argues that Mr. Park should be awarded the

---

[6] The OSB Economic Survey is available at
https://www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf.

median rate. Adjusted for inflation, the median rate is $361.32.[7] The Court agrees that this rate is reasonable.

ii.   Ms. Lemire

Ms. Lemire seeks $200 per hour for her time through September of 2015 and $225 for her time since October of 2015. She was admitted to practice in Oregon in 2010. Lemire Decl. ¶ 2, ECF 140. Ms. Lemire has worked or volunteered as a law clerk for several attorneys in private practice as well as for the Multnomah County Circuit Court and the Oregon Bureau of Labor and Industries. Id. at ¶ 3. She opened her law practice in 2014 to practice employee-side employment and civil rights law in both state and federal court.

Mr. Brischetto opines that an hourly rate of $200 and $225 is reasonable for Ms. Lemire. Brischetto Decl. ¶ 10, ECF 142.  He states that Ms. Lemire's requested rates are reasonable for an attorney of comparable skills, reputation, and experience. Id.

The OSB Economic Survey provides that the average hourly rate for Portland attorneys with 4-6 years of experience is $210 and the median hourly rate is $218. Adjusted for inflation, the average hourly rate for 2014 is $216.53 and the median hourly rate is $224.78. Adjusted for inflation, the average hourly rate for 2015 is $216.79 and the median hourly rate is $225.05.

Defendant objects to Ms. Lemire's requested rates and argues that this Court should consider Ms. Lemire's experience akin to that of an attorney with 1-3 years of experience. However, the cases that Defendant cites in support of its argument are inapposite. In Precision Seed Cleaners v. Country Mut. Ins. Co., 976 F. Supp. 2d 1228, 1246 (D. Or. 2013), this Court

---

[7] The Court recognizes that the OSB Economic Survey does not account for inflation that has occurred between 2012 and 2015.The CPI Inflation Calculator available from the United States Department of Labor (available at http://www.bls.gov/data/inflation_calculator.htm) shows that $350 in 2012 is equivalent to $361.32 in 2015.

disagreed with the assertion that an associate had two years of experience when he did not have such experience when he began work on the case and had not been a member of the bar for two years. In contrast, Ms. Lemire had over three years of experience and time admitted to the bar when she began work on this case. In <u>McElmurry v. U.S. Bank Nat. Ass'n</u>, No. CIV. 04-642-HA, 2008 WL 1925119, at *3 (D. Or. Apr. 30, 2008), the court found inadequate justification for the junior attorneys' requested rates because they argued that they were specialists in their field and that "experience commands a premium." <u>Id.</u> The court reduced the hourly rate for all attorneys with three or fewer years of practice to the OSB Survey average rate. <u>Id.</u> Here, Ms. Lemire does not purport to be a specialist and, instead, asks for rates that are in line with the OSB Survey's average rate.

The Court is unclear, however, about why Ms. Lemire requests a higher hourly rate beginning in October of 2015. Given the absence of any justification for an increase at that point, the Court declines to award one. Instead, the Court averages the average hourly rates for 2014 and 2015, and concludes that an appropriate hourly rate for Ms. Lemire is $217.

### iii.  Mr. Smith

Plaintiff seeks an hourly rate of $350 for Mr. Smith. Defendant does not object and Mr. Brischetto opines that $350 is a reasonable hourly rate. Brischetto Decl. ¶ 9-10. Considering Mr. Brischetto's declaration, the lack of any objection, and the standards set forth by the OSB Economic Survey, the Court finds that $350 is a reasonable hourly rate for Mr. Smith.

### c.  Lodestar Amount

Considering the hours reasonably expended and a reasonable hourly rate for each of Plaintiff's attorneys, this Court's calculation of the lodestar is as follows:

| | | | |
|---|---|---|---|
| **Mr. Park** | | | |
| hours requested | 409.6 | | |
| hours deducted | 4.25 | | time related to case transition |
| | 11.25 | | time preparing for summary judgment oral argument |
| | 4.63 | | time spent on trial memorandum |
| | 7.75 | | time spent on opening statement |
| | 1.3 | | time spent on administrative tasks |
| total deduction | 29.18 | | |
| hours awarded | 380.42 | | |
| reasonable hourly rate | 361.32 | | |
| LODESTAR | 137453.35 | | |
| | | | |
| **Ms. Lemire** | | | |
| hours requested | 334.25 | | |
| hours deducted | 1.2 | | time related to case transition |
| | 3.1 | | time related to Ms. Mason and Mr. Cabellero |
| | 30.3 | | time spent on trial memorandum |
| | 3.1 | | time spent on objections to exhibits |
| | 1.6 | | time spent at Dec. 2015 hearing |
| | 0.7 | | time spent on Dr. Bufford |
| | 17.3 | | time spent on charts and timelines |
| | 1.1 | | time spent on administrative tasks |
| total deduction | 58.4 | | |
| total awarded | 275.85 | | |
| reasonable hourly rate | 217 | | |
| LODESTAR | 59859.45 | | |
| | | | |
| **Mr. Smith** | | | |
| hours requested | 113.35 | | |
| hours deducted | 38.3 | | time for which there is no documentation |
| hours awarded | 75.05 | | |
| reasonable hourly rate | 350 | | |
| LODESTAR | 26267.5 | | |
| | | | |
| **Total LODESTAR Amount** | **223580.3** | | |

### d.  Adjustments to the Lodestar

Defendant contends that Plaintiff's limited success weighs in favor of reducing the

lodestar amount. Plaintiff responds that, while the results obtained weigh in favor of reducing the

lodestar, the following factors weigh in favor of a full lodestar amount: the novelty and difficulty

of the questions involved, the preclusion of other employment by the attorneys due to the

acceptance of the case, the fact that Plaintiff engaged all of her attorneys on a contingent basis,

and the undesirability of the case.

The lodestar method—the product of a reasonable hourly rate and the reasonable number

of hours required by the case—creates a presumptively reasonable fee. Perdue v. Kenny A. ex

rel. Winn, 559 U.S. 542, 552 (2010). However, a district court may adjust the lodestar when it

"does not adequately take into account a factor that may properly be considered in determining a

reasonable fee." Id. at 554. However, such adjustments are appropriate only in "rare

circumstances," because the "lodestar figure [already] includes most, if not all, of the relevant

factors constituting a reasonable attorney's fee." Id. at 553. For example, a court may not adjust

the lodestar based on factors already included in the lodestar calculation itself because doing so

effectively double-counts those factors. Id. Instead, the lodestar can be adjusted only by factors

relevant to the determination of reasonable attorney's fees that were not already considered in the

initial lodestar calculation. Id.

Several of the factors cited by Plaintiff have already been considered by this Court in the

calculation of the hours reasonably expended. As to the novelty and difficulty of the questions

involved, "the novelty and complexity of a case generally may not be used as a ground for

[adjusting the lodestar]" because they are already included in the lodestar calculation itself, being

"fully reflected in the number of billable hours recorded by counsel." Id. The same goes for the

quality of an attorney's performance. Id. Furthermore, the fact that Plaintiff's attorneys accepted

the case on a contingent basis and that the case was "undesirable" is irrelevant. Resurrection Bay

Conservation All. v. City of Seward, Alaska, 640 F.3d 1087, 1095 (9th Cir. 2011) (noting that

the Supreme Court has called the relevance of two of the original Kerr factors into question—the

contingent nature of the fee and the case's "desirability"). See also Davis v. City of San Francisco, 976 F.2d 1536, 1546 n. 4 (9th Cir. 1992) vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993) (order); Earp v. Multnomah Cty. Health Dep't, No. CIV 08-1217-KI, 2010 WL 143661, at *1 (D. Or. Jan. 7, 2010) (although "whether the fee is fixed or contingent" is listed as a Kerr factor, the Supreme Court subsequently held that enhancing a fee award on account of contingency is improper) (citing City of Burlington v. Dague, 505 U.S. 557 (1992)).

The issue, therefore, for this Court to resolve is whether to reduce the lodestar amount to account for Plaintiff's lack of success and, if so, how much of a reduction is appropriate. Defendant argues for an 80% reduction; Plaintiff contends that a 25% reduction is appropriate.

There is no question that Plaintiff obtained far less than she sought in this lawsuit. Over the course of the two-year litigation, this Court dismissed half of Plaintiff's ten claims at summary judgment and then granted judgment as a matter of law on three more after Plaintiff rested at trial. Accordingly, only one claim, FMLA interference, was presented to the jury and one claim, OFLA interference, was presented to the Court. While the jury and the Court found for Plaintiff on her interference claims[8], the jury only awarded Plaintiff $5,000 in damages. The Court awarded an additional $5,000 in liquidated damages. Findings of Fact and Conclusions of Law 7, ECF 135. And while Plaintiff requested $161,518.87 in front pay, the Court declined to award Plaintiff any front pay because evidence of Plaintiff's misconduct at work that surfaced at trial led the Court to conclude that Defendant would have fired Plaintiff had it known of the misconduct. Id. at 9-12 (applying the "after-acquired evidence" rule). Furthermore, the Court explained the following:

---

[8] The Court adopted the jury's factual determinations in finding that Plaintiff prevailed on her OFLA interference claim. See Findings of Fact and Conclusions of Law 3, ECF 135 (citing Sanders v. City of Newport, 657 F.3d 772, 783 (9th Cir. 2011) for the proposition that where legal claims tried by the jury and equitable claims tried by the Court are based on the same set of facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations).

> The only reasonable interpretation of the jury's award is either that the jury found a
> nearly complete failure of Plaintiff to mitigate her damages or that the jury did not find it
> likely that Plaintiff's employment would have continued for long past her termination,
> even if no FMLA interference had occurred. In light of this interpretation, there is no way
> for the Court to conclude, as Plaintiff requests, that Plaintiff would have continued to be
> employed by Defendant for the next 18 years, until retirement. See Sanders, 657 F.3d at
> 783 (holding that the trial judge is required to follow the jury's implicit or explicit factual
> determinations). In fact, Plaintiff has failed to show any entitlement to front pay at all.

Id. at 13.

Plaintiff's failure to prevail on her claims at summary judgment has already been

accounted for in the lodestar calculation. However, this Court finds that a further reduction of the

lodestar amount is appropriate to account for Plaintiff's limited success at trial. Of the five

claims Plaintiff brought to trial, she prevailed on two. As discussed above, Plaintiff's claims of

FMLA retaliation, whistleblower retaliation, and wrongful discharge were not related to

Plaintiff's FMLA interference claim such that time spent on the former is properly included in

her fee recovery for the latter.

Furthermore, the Court may reduce Plaintiff's fee recovery based on her partial or limited

success on her FMLA/OFLA interference claims. The Court acknowledges that, as to the size of

Plaintiff's recovery, her limited success does not inherently mean that her recovery had no public

policy significance or was de minimis. As the Second Circuit Court of Appeals explained, "[b]y

enacting a fee-shifting provision for FMLA claims, Congress has already made the policy

determination that FMLA claims serve an important public purpose disproportionate to their cash

value. We cannot second-guess this legislative policy decision." Millea v. Metro-N. R. Co., 658

F.3d 154, 167-69 (2d Cir. 2011). And, while the Supreme Court has explained that where the

plaintiff manages to prevail on a technicality in a mostly frivolous lawsuit, a court should award

no attorneys' fees to discourage such lawsuits, Farrar v. Hobby, 506 U.S. 103, 114–15 (1992),

"[t]hat is not to say that all nominal damages awards are de minimis. Nominal relief does not

necessarily a nominal victory make." Id. at 120-21 (O'Connor, J., concurring). However, Plaintiff's damages award was so small in relation to what she sought that this Court finds that it just barely hurdles the inference that her victory was purely technical or *de minimis*. Not only did Plaintiff lose on all of her claims except the interference claims, but the amount she received as damages for those claims was a miniscule percentage of what she sought. Her limited damages award reflects the jury's conclusion that Plaintiff was harmed in a much more limited way than she claimed. For example, while the jury found for Plaintiff on her FMLA interference claim, it did not find that her termination was motivated by retaliation or her assertion of her FMLA rights.

While the Court concludes that Plaintiff is entitled to some amount of attorney's fees because the jury in this case found that Defendant interfered with Plaintiff's rights under FMLA and "[f]ee-shifting statutes such as § 2617(a)(3) are designed to prevent the potentially high costs of litigation from stifling justified claims," Cuff v. Trans States Holdings, Inc., 768 F.3d 605, 610-11 (7th Cir. 2014), the Court finds it appropriate to apply a significant reduction to the lodestar. A significant reduction is appropriate because it accounts for Plaintiff's failure to prove three of her five claims and her limited success in proving the two remaining claims. The Court finds that a 50% reduction is appropriate.

Applying a 50% reduction to the lodestar amount of $223,580.30 yields a final amount of $111,790.15 in attorney's fees to which Plaintiff is entitled.

## II.    Costs

The FMLA statute allows for additional costs beyond what might be allowed under Rule 54(d) and § 1920. See, e.g., Robledo v. Orellana, No. 3:11-CV-00758-BR, 2012 WL 442122, at *3 (D. Or. Feb. 10, 2012) (citing Smith v. Diffee Ford–LincolnMercury, Inc., 298 F.3d 955,

968–69 (10th Cir. 2002) for the explanation that the legislative history of FMLA indicates that costs are to be interpreted in the same manner as under the Fair Labor Standards Act); <u>Traxler v. Multnomah Cty.</u>, No. CIV. 06-1450-KI, 2010 WL 3824075, at *3 (D. Or. Sept. 22, 2010) (holding that FMLA "interpret[s] costs to include reasonable out-of-pocket expenses which can include costs beyond those normally allowed under Rule 54(d) and 28 U.S.C. § 1920"); <u>Van Dyke v. BTS Container Serv., Inc.</u>, Civil No. 08–561–KI, 2009 WL 2997105, at *2 (D. Or. Sept. 15, 2009) (citing <u>Herold v. Hajoca Corp.</u>, 864 F.2d 317, 323 (4th Cir.1988) (FLSA's costs provision authorizes an award of costs as part of a "reasonable attorney's fee," which would not be authorized under Rule 54 or 28 U.S.C. § 1920)).

Plaintiff requests $29,739.48 in costs. Defendant argues for a substantial reduction in Plaintiff's requested costs and contends that Plaintiff, at most, should be awarded $1,208.29.

**a.**  Expert witness fees

29 U.S.C. § 2617(a)(3) provides that the court "shall, in addition to any judgment awarded to the plaintiff, allow . . . reasonable expert witness fees[.]" The parties agree that this Court may look to caselaw associated with the Americans with Disabilities Act (ADA) to provide additional analysis to FMLA cases, because the ADA also provides for an award of costs of expert witnesses to the prevailing party. <u>See</u> 42 U.S.C. § 12205; <u>see also</u> <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1058 (9th Cir. 2002).  While the parties do not cite, and this Court does not find, a controlling case defining when an expert witness fee is reasonable under the FMLA or ADA, several cases from this District offer guidance.

In <u>Farrell v. Tri-Cty. Metro. Transp. Dist. of Oregon</u>, No. CV 04-296-PA, 2006 WL 1995594, at *3 (D. Or. July 7, 2006), the court allowed recovery for an expert witness report that "provided important background information regarding Plaintiff's condition that bore upon the

FMLA claim and may have contributed to the denial of Defendant's motion for summary judgment." In <u>Head v. Glacier Nw., Inc.</u>, No. CV-02-373-RE, 2006 WL 1222650, at *2 (D. Or. Mar. 24, 2006), the court awarded $3,290 in costs for an Economic and Vocational Consultant who testified regarding plaintiff's economic loss as a result of the termination of his employment by defendant. In <u>Traxler v. Multnomah Cty.</u>, No. CIV. 06-1450-KI, 2008 WL 2704490, at *1 (D. Or. July 7, 2008), the court awarded expert witness fees of $6,152.12 to an expert economist and "acknowledge[d] that expert testimony of this nature might have to be adjusted during trial." And most recently, in <u>Doby v. Sisters of St. Mary of Oregon Ministries Corp.</u>, No. 3:13-CV-00977-ST, 2015 WL 4877786, at *7-8 (D. Or. Aug. 14, 2015), the court applied a standard from the Northern District of California, finding that "[i]n order for the district court to allow such expenses, the court must find that the expert testimony submitted was 'crucial or indispensable' to the litigation at hand." The Court allowed recovery of $19,920 and $8,625 for two expert witnesses who provided necessary testimony as rebuttal witnesses. <u>Id.</u> On the other hand, the Court did not allow recovery for $1,100 for an expert witness whose testimony established that the plaintiff had OCD, which was not a disputed fact in the case. <u>Id.</u> <u>See also</u> <u>Quesnoy v. Oregon</u>, No. 3:10-CV-01538-ST, 2012 WL 1155832, at *10 (D. Or. Apr. 6, 2012) (expert witness fee disallowed because testimony was not necessary to prove the plaintiff was disabled).

Plaintiff maintains that the expert testimony of CPA Keith Meyers, Dr. Roger Bufford, and Vocational Expert Kent Reigel was necessary for presenting evidence concerning Plaintiff's successful FMLA and OFLA interference claims.

### i.  CPA Keith Meyers

Plaintiff requests $10,000 for the services of Mr. Meyers, who submitted a detailed expert witness report, testified during the jury trial, prepared a revised exhibit for use in the Court

hearing on front pay, and testified a second time in that hearing. Mr. Meyers was used as a "damages expert" who testified regarding Plaintiff's entitlement to back pay at the jury trial and her entitlement to front pay at the Court trial. Pl. Reply 5, ECF 152.

Defendant argues that Mr. Meyers' testimony was not "crucial or indispensable" because the small jury award of damages and the lack of a front pay award show that his testimony was unavailing. The Court disagrees. The jury award and denial of front pay are a reflection of the jury and Court's conclusions regarding the extent to which Plaintiff would have stayed employed by Defendant if Defendant had not interfered with her FMLA rights. Mr. Meyers' testimony addressed the issue of how much money Plaintiff would be entitled to, depending on how long she stayed. His testimony was crucial for the jury and Court to consider, and the fact that the ultimate damages award was far less than what Mr. Meyers presented does not undercut the necessity of presenting this kind of expert witness testimony at trial.

Plaintiff submits an invoice from Mr. Meyers and requests $10,000 for his services. See Bill of Costs 53, ECF 137. Plaintiff points to Mr. Meyer's expert witness statement, dated October 8, 2015, in which he states that "[w]e have spent 38 hours preparing this report and have billed $6,200 to date. My billing rate for testimony at deposition or trial is $345/hour." Meyers Report 8, ECF 63. The Court finds the hourly rate and the hours billed to be reasonable.

   ii. Roger Bufford, Ph.D.

Plaintiff requests $6,850 for the services of Mr. Bufford, mental health expert, who testified that Plaintiff's anxiety was a "serious health condition," that treatment for that condition was "medically necessary," and that Plaintiff having Sundays off to attend church and religious activities was appropriate treatment. In addition, Plaintiff used Mr. Bufford to rebut the expert opinion presented by Dr. David Glass and offered by Defendant through his report.

Plaintiff submits an invoice from Mr. Bufford for $6,850. Bill of Costs 39, ECF 137. The invoice lists dates from September 4, 2015 through October 19, 2015 and shows the amount of hours Mr. Bufford worked on the case each day. Id. The invoice reflects that Dr. Bufford charged $1,200 for his testimony at trial. Id. In addition, Dr. Bufford's witness statement reflects that he charges $200 per hour for pre-trial preparation. Bufford Report 15, ECF 64.

Defendant argues that Mr. Bufford's testimony was not essential to the jury's decision because Defendant never denied Plaintiff the right to participate in church. The Court disagrees. As the Court wrote in its opinion denying summary judgment on the FMLA interference claim, whether or not it was medically necessary for Plaintiff to be off on Sundays in their entirety was an issue of fact properly resolved by the jury. Dr. Bufford's testimony was essential to support Plaintiff in her claim and rebut Dr. Glass' report. See Doby, 2015 WL 4877786 at * 7 (finding rebuttal witnesses "crucial and indispensable" and unlike witness called to testify on an undisputed fact of the case). Accordingly, the Court awards Plaintiff $6,850 for Mr. Bufford's expert witness fee.

### iii.   Kent Reigel

Plaintiff requests $2,405 for the services of Vocational Expert Kent Reigel, whose testimony was necessary to defend against Defendant's affirmative defense of failure to mitigate Plaintiff's back wages and to provide background and foundational evidence supporting Plaintiff's claim to front wages. As with Mr. Meyers, it is clear that the jury and the Court did not adopt Mr. Reigel's conclusions regarding Plaintiff's ability to mitigate her damages or entitlement to front pay. This does not mean, however, that Mr. Reigel's testimony was not essential to Plaintiff's litigation position. The Court concludes that Mr. Reigel's testimony was

indispensable and that the $2,405 he requests for 15.8 hours of work is reasonable. <u>See</u> Bill of Costs 40-41, ECF 137.

    **b.** Mediation costs

    The Court awards Plaintiff the full amount of requested mediation costs, $1,050, because these costs were reasonably necessary to further the goals of the litigation and thus were reasonable out-of-pocket expenses under § 2617(a)(3). <u>See, e.g.,</u> <u>Gressett v. Cent. Arizona Water Conservation Dist.</u>, No. CV-12-00185-PHX-JAT, 2015 WL 5545054, at *2 (D. Ariz. Sept. 18, 2015) (finding that the "plain language of § 2617(a)(3), which requires the Court 'allow a reasonable attorney's fee'" permits the recovery of reasonable attorney's fees associated with mediation efforts); <u>Oldoerp v. Wells Fargo & Company Long Term Disability Plan</u>, No. 3:08-CV-05278 RS, 2014 WL 2621202, at *7 (N.D. Cal. June 12, 2014); <u>Rutherford v. McKissack</u>, No. C09-1693 MJP, 2011 WL 3421516, at *7 (W.D. Wash. Aug. 4, 2011) <u>aff'd,</u> 505 F. App'x 677 (9th Cir. 2013); <u>Parkinson v. Hyundai Motor Am.</u>, 796 F. Supp. 2d 1160, 1176-77 (C.D. Cal. 2010). The cases cited by Defendant in its opposition did not consider whether mediation costs were reasonable out-of-pocket expenses under § 2617(a)(3).

    **c.** Online research costs and cost of a BOLI book

    The Court deducts $30 for a BOLI Handbook that Plaintiff concedes is not compensable. The Court allows the $1,393 in Westlaw computer legal research costs because it is a "reasonable out-of-pocket expense" that would normally be charged to a fee paying client. <u>See</u> <u>Traxler v. Multnomah Cty.</u>, No. CIV. 06-1450-KI, 2010 WL 3824075, at *3 (D. Or. Sept. 22, 2010) (awarding Lexis research costs in an FMLA case); <u>Robledo v. Orellana</u>, No. 3:11-CV-00758-BR, 2012 WL 442122, at *3 (D. Or. Feb. 10, 2012) (awarding costs for computerized

research because FLSA's costs provision authorizes costs as part of a "reasonably attorney's fee" which would not be authorized under Rule 54 or 28 U.S.C. § 1920).

     **d.**  Messenger service, postage, and fax costs

Defendant opposes Plaintiff's request for postage, fax, and messenger services costs. The Court awards the costs. See Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (awarding costs for postage, copying costs, messenger service and noting that "reasonable expenses" are greater than "taxable costs"); Robledo, 2012 WL 442122, at *3 (awarding costs for postage, telephone charges, and process services fees, "none of which are included in counsel's regular hourly rate").

     **e.**  Litigation of dismissed claims

Defendant asks the Court to disallow any costs related to claims that were dismissed on summary judgment or during trial. Specifically, Defendant challenges Plaintiff's request for fees related to witnesses Romeo Betita, Yevette Nall, Mike Tobiasson, Homero Caballero, and Heidi Mason.

Plaintiff concedes that a $20 rush subpoena service fee for Ms. Mason should be disallowed. As to the remaining costs, the Court finds that the appearance fees and deposition costs for all of the challenged witness are appropriate because they are recoverable under §1920 and the testimony was relevant to this Court's decision to deny Defendant's motion for summary judgment on Plaintiff's retaliation and whistleblower claims. However, the fees associated with Mr. Caballero's and Ms. Mason's trial testimony are properly deducted, for the same reasons the Court deducts attorney's fees for time spent preparing these witnesses for trial. Therefore, the court deducts $330 for interpreter costs. See Bill of Costs 44, ECF 137. The Court also deducts

witness fees totaling $97.80 and $165 in process fees associated with trial subpoenas. In sum, the Court deducts $612.80.

**f.** Transition of counsel

The Court denies Defendant's request to deduct costs for copies of deposition transcripts for Bea Mambaje, Debbie Schwanz, and Kelley Rhodes; and mileage expenses incurred by Mr. Park's paralegal. After reading both parties' briefs, the Court concludes that these costs were not incurred in connection with the transition of counsel that occurred in this case.

**g.** Assorted costs from Plaintiff's deposition, transcript, and printing

The Court allows Plaintiff to recover court reporter appearance fees because they are recoverable under §2617(a)(3) as the type of out-of-pocket expenses that would normally be charged to a fee paying client. However, the Court deducts $25.00 sought by Plaintiff for obtaining a transcript of her own counsel's opening statement at trial. Plaintiff does not contest Defendant's assertion that this cost cannot be recovered.

Plaintiff asserts $1,759.49 in printing costs and copying charges. In a Supplemental Declaration, Mr. Park provides additional detail and satisfies this Court that the majority of the copy charges were "necessarily obtained for use" in litigation. Supp. Park Decl. 3-4, ECF 153. The exception is Mr. Park's explanation of charges incurred in October and November 2015:

> In October and November of 2015, a large volume of copying was required in connection with trial preparation, including, but not limited to, exhibit preparation and duplication for exchange with opposing counsel and delivery to the court, printing of legal research, printing of deposition transcripts and printing of materials for use in preparing plaintiff to testify at trial. I did not maintain a breakdown of these individual copy projects due to the pressures of trial preparation. Copying charges of $210.30 (1,402 pages) were billed on October 31, 2015, and $337.50 (2, 250 pages) were billed on November 30, 2015.

Id. at 4-5.  The Court finds this explanation insufficient to form a basis to award Plaintiff copying and printing fees. See Michaels v. Taco Bell Corp., No. 3:10-CV-1051-AC, 2013 WL

26 – OPINION & ORDER

5206347, at *4 (D. Or. Sept. 13, 2013) (explaining that information about copy charges is a "prerequisite for the court awarding photocopying costs"). Accordingly, the Court deducts $547.80. In sum, the Court deducts $572.80.

**h.**   Counsel's travel or parking expenses

The Court awards Plaintiff the full $103.90 requested for travel expenses under § 2617(a)(3), because these costs fall within the reasonable out-of-pocket expenses incurred as part of this litigation.

**i.**   Public record searches

The Court awards Plaintiff the full $117.25 requested for public records searches under § 2617(a)(3), because these costs fall within the reasonable out-of-pocket expenses incurred as part of this litigation.

**j.**   Total costs

In sum, Plaintiff seeks $29,739.48 in costs. The Court deducts $1,215.60 and, accordingly, awards $28,523.88.

## CONCLUSION

Plaintiff's Motion for Attorney's Fees [138] and Bill of Costs [137] is granted in part. Plaintiff is awarded $111,790.15 in fees and $28,523.88 in costs.

IT IS SO ORDERED.

Dated this _____ day of _____, 2016.

_____
MARCO A. HERNÁNDEZ
United States District Judge